**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 6 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

BILLY RAY FOX,

      Petitioner - Appellant,

vs.

RON WARD, Warden, Oklahoma
State Penitentiary,

      Respondent - Appellee.

Nos. 98-6343, 98-6359

### APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF OKLAHOMA
### (D.C. No. CIV-95-705-T)

Don J. Gutteridge, Jr., Oklahoma City, Oklahoma, for Petitioner - Appellant.

Sandra D. Howard, Assistant Attorney General (W.A. Drew Edmondson, Attorney General, on the brief) Attorney General, Oklahoma City, Oklahoma, for Respondent-Appellee.

Before **BRORBY**, **EBEL**, and **KELLY**, Circuit Judges.

**KELLY**, Circuit Judge.

## Background

In the early morning hours of July 3, 1985, three employees of the Wynn's IGA in Edmond, Oklahoma, were murdered during a robbery planned and executed by Petitioner-Appellant, Billy Ray Fox ("Mr. Fox") and co-defendant Mark Andrew Fowler ("Mr. Fowler"). They were arrested on July 4, 1985. Both admitted to involvement in the robbery, but each accused the other of committing the murders. Following a jointly held jury trial in the Oklahoma County District Court, both were convicted of three counts of first degree felony murder. Okla Stat. Ann. tit. 21 § 701.7(B). Both were thereafter sentenced to death. The Oklahoma Court of Criminal Appeals ("OCCA") affirmed both Mr. Fox's murder convictions and death sentence. See Fox v. State, 779 P.2d 562 (Okla. Crim. App. 1989). Mr. Fox's application for post-conviction relief was denied by the OCCA in 1994. See Fox v. Oklahoma, 880 P.2d 383 (Okla. Crim. App. 1994). On June 16, 1995, Mr. Fox filed a petition for habeas corpus in the federal district court for the Western District of Oklahoma pursuant to 28 U.S.C. § 2254, asserting fifteen grounds for relief from his state convictions and sentences. On July 6, 1998, the district court denied Mr. Fox's habeas petition but granted a certificate of probable cause for all issues in this appeal. See 28 U.S.C. § 2253 (pre-AEDPA); Foster v. Ward, 182 F.3d 1177, 1183 (10th Cir. 1999).

Petitioner asserts the following twelve grounds for relief: (1) the trial court

refused to sever Mr. Fox and Mr. Fowler's trial, resulting in the violation of Mr. Fox's right to due process; (2) petitioner's trial counsel was constitutionally ineffective in violation of the Sixth Amendment; (3) the trial court admitted misleading testimony of three state expert witnesses, violating due process; (4) the trial court admitted Mr. Fox's pretrial statements to the police in violation of the Fifth and Fourteenth Amendments; (5) the "especially heinous, atrocious, or cruel" aggravating circumstance was applied in Mr. Fox's case in violation of the Eighth and Fourteenth Amendments; (6) during his closing argument, the prosecutor violated Mr. Fox's constitutional rights by instructing the jury to ignore mitigating evidence, in violation of the Eighth Amendment; (7) the trial court erroneously failed to instruct the jury that it had the option of returning a life sentence even if the aggravating factors outweighed the mitigating factors; (8) the trial court erroneously restricted Mr. Fox's cross-examination of one of the government's expert witnesses, resulting in a violation of the Sixth Amendment right of confrontation; (9) the trial court and the Oklahoma Court of Criminal Appeals applied and interpreted the "avoid arrest or prosecution" aggravating circumstance in an unconstitutionally vague and overbroad manner in violation of the Eighth Amendment; (10) the "continuing threat" aggravating circumstance as applied in Mr. Fox's case violates the Eighth Amendment; (11) the trial court failed to instruct the jury that mitigating factors need not be found unanimously,

thus violating the Eighth Amendment; (12) the state and federal district courts denied Mr. Fox an evidentiary hearing on his claim that the jury was permitted to consider misleading evidence, and his ineffective assistance of counsel claim, violating his constitutional right to due process. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

## Discussion

The Antiterrorism and Effective Death Penalty Act ("AEDPA") does not apply to this appeal, because Mr. Fox filed his habeas petition on June 16, 1995, before the law's enactment. See Lindh v. Murphy, 521 U.S. 320, 322-323 (1997). Therefore, we refer to pre-AEDPA law for guidance as to the appropriate standards of review. Our review is limited insofar as we can grant relief only if state court error "deprived [petitioner] of fundamental rights guaranteed by the Constitution of the United States." See Brown v. Shanks, 185 F.3d 1122, 1124 (10th Cir. 1999) (quoting Jackson v. Shanks, 143 F.3d 1313, 1317 (10th Cir. 1998)). We review legal issues de novo, "affording deference to the state court's construction of state law." Id. We review the federal district court's factual findings for clear error, while presuming that the findings of fact made by the state court are correct unless they are not fairly supported by the record. See id.; 28 U.S.C. § 2254 (pre-amendment).

- 4 -

I. Erroneous Failure to Sever

Mr. Fox asserts that the trial court erroneously joined his trial with co-defendant Mr. Fowler's, resulting in unconstitutionally unfair proceedings. As this court articulated in Cummings v. Evans, 161 F.3d 610 (10th Cir. 1998), "whether the trial court erred in denying severance is generally a question of state law that is not cognizable on federal habeas appeal. . .a criminal defendant has no constitutional right to severance unless there is a strong showing of prejudice caused by the joint trial." Id. at 619; see also, Arbuckle v. Dorsey, No. 98-2262 1999 WL 672274, *3 (10th Cir. Aug. 30, 1999). Mr. Fox argues, citing Zafiro v. United States, 506 U.S. 534 (1993), that two specific trial rights were compromised by the trial court's denial of severance. He first claims that his constitutional right of Confrontation was violated by virtue of the limitation on his cross-examination of a witness regarding his co-defendant's redacted confession. Secondly, Mr. Fox argues that it amounts to constitutional error that he was required to share peremptory strikes with his co-defendant. Mr. Fox concludes that as a result of these errors, the jury was left with the misimpression that he actually committed the murders rather than his co-defendant, Mr. Fowler.

a.    Bruton violation

Mr. Fox contends that he was deprived of his rights guaranteed by the Confrontation Clause when the trial court refused to permit Mr. Fox's attorney to

elicit additional portions of Mr. Fowler's confession. The statement, admitted through the testimony of the interviewing detective, essentially established that co-defendant Fowler was present at the Wynn's IGA on the night of the murder, watching for people entering and leaving. Mr. Fox's counsel sought to establish that Mr. Fowler was in the storeroom at the time of the murders. However, the trial judge sustained Mr. Fowler's objection to this cross-examination on the grounds that it would open the door for the prosecutor to elicit the full admission of Mr. Fowler, which included the statement that he saw Mr. Fox committing the murders in the back storeroom. Mr. Fox asserts on appeal that this limitation on cross-examination constitutes a Bruton violation.

Mr. Fox misconstrues Bruton. Mr. Fox is neither explicitly nor implicitly implicated by the admitted portion of Mr. Fowler's confession - the hallmark of a Bruton violation. See Richardson v. Marsh, 481 U.S. 200, 201-02 (1987) ("In Bruton v. United States, 391 U.S. 123 (1968), we held that a defendant is deprived of his rights under the Confrontation Clause when his nontestifying co-defendant's confession naming him as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider that confession only against the co-defendant."). Thus, Bruton is not implicated by the trial court's restriction on Mr. Fox's cross-examination of the detective. On the contrary, as we discuss below, the trial court's restriction of Mr. Fox's cross-examination was

integral to the court's compliance with the mandates of <u>Bruton</u>. Moreover, to permit Mr. Fox to elicit the additional portions of the Fowler admission while omitting Mr. Fowler's statement that he witnessed Mr. Fox killing the victims would have been tantamount to permitting a deliberate act of deception, totally recasting the nature of the admission. A trial court may not sit idly on the sidelines and permit counsel to deliberately distort the evidence or mislead the jury. Admission of a redacted version of a defendant's post-arrest statement is impermissible if it unfairly distorts the original, or excludes substantially exculpatory information. <u>See</u> <u>United States v. Mussaleen</u>, 35 F.3d 692, 696 (2d Cir. 1994); <u>United States v. Zamudio</u>, No. 96-2182, 1998 WL 166600 (10th Cir. 1998); <u>United States v. Kaminski</u>, 692 F.2d 505, 522 (8th Cir. 1982)

Mr. Fox's objection is more properly characterized as a challenge to an evidentiary ruling by the trial court. This court held in <u>Sellers v. Ward</u>, 135 F.3d 1333 (10th Cir. 1998), that "[h]abeas relief is not available on this ground unless the petitioner can show his whole trial was rendered fundamentally unfair by the limitation of the cross-examination." 135 F.3d at 1342. Mr. Fox has not satisfied this standard. Mr. Fox was not prejudiced in any way by the trial court's limitation on his cross-examination of the detective. Moreover, there was ample evidence before the jury, based on testimony of the state's forensic experts, that Mr. Fowler was in the storeroom at the time of the murders. Whatever

"exculpatory" benefit Mr. Fox sought to elicit from Mr. Fowler's admission was provided by this forensic evidence. Additionally, it bears noting that neither Mr. Fowler's admission nor the forensic evidence exculpated Mr. Fox, but rather merely inculpated Mr. Fowler. Despite Mr. Fox's assertions to the contrary, in view of the evidence presented at trial, these are not equivalent. Establishing that Mr. Fowler was present at the site of the murders does not render Mr. Fox's participation in the murders impossible or even unlikely. There was ample evidence to suggest that Mr. Fox and Mr. Fowler were both involved in the actual murders. In sum, Mr. Fox has failed to demonstrate any prejudice by the trial court's limit on his cross-examination of the detective who interviewed Mr. Fowler. Thus, Mr. Fox's Confrontation Clause argument fails.

b.      Sharing Peremptory Strikes

Mr. Fox next argues that he was unconstitutionally prejudiced because he was required to share peremptory challenges with his co-defendant. Mr. Fox claims that because their defenses were inconsistent, he was entitled to his own nine peremptory challenges, rather than having to share nine with his co-defendant. See Okla. Stat. Ann. tit. 22 § 655 (1981).

Mr. Fox has not challenged the impartiality of the jury. Thus, he is objecting only to the number of peremptory challenges. This is a question of state law, not of constitutional dimension. See Cummings, 161 F.3d at 619 (citing Ross

- 8 -

v. Oklahoma, 487 U.S. 81, 88 (1988)).  We may not review this claim as a result. Id.

Moreover, to the extent that Mr. Fox implies that severance was warranted because his defense was mutually antagonistic with that of his co-defendant, his argument is unpersuasive.  "Mutually antagonistic defenses are not prejudicial per se." Zafiro, 506 U.S. at 538.  In order to prevail on such a theory for severance, the defendant must show real prejudice, rather than merely note that each defendant is trying to exculpate himself while inculpating the other.  See United States v. Dirden, 38 F.3d 1131, 1140-41 (10th Cir. 1994); Arbuckle, at *3; United States v. Briseno-Mendez, Nos. 96-2218; 96-2145, 96-2172 WL 440279, **4 (10th Cir. July 17, 1998).  Such actual prejudice is shown if the defenses are truly mutually exclusive, such that "the jury could not believe the core of one defense without discounting entirely the core of the other." Dirden, 38 F.3d at 1141.  Mr. Fox has not shown this type of prejudice in either the guilt phase or the sentencing phase of trial.

c.    Severance at Guilt Phase

Mr. Fox argues that he was prejudiced during the guilt phase of his trial, because his defense was mutually antagonistic with that of his co-defendant. Namely, each defendant admitted to involvement in the felony, but tried to exculpate himself by inculpating the other in the actual commission of the

murders.  Mr. Fox overlooks the fact that during the guilt phase of the instant case, the relative culpability of the defendants was irrelevant, given that they were charged with first degree felony murder, which only requires that a murder result during the commission of a robbery with a dangerous weapon.  Okla. Stat. Ann. tit. 21 § 701.7 (B). The evidence at trial amply established both Mr. Fox and Mr. Fowler's participation in the underlying robbery.  Thus, Mr. Fox has not sufficiently demonstrated that he was prejudiced during the guilt phase by joinder with Mr. Fowler.

d.      Severance at the Penalty Phase

Mr. Fox argues that the prejudice he suffered from the denial of severance was especially acute in the penalty phase of his trial.  Beyond his above claims of Confrontation clause and peremptory challenge violations, he does not develop or support his argument beyond simply claiming that "who actually committed the murders would have made a substantial difference to the jury when they considered punishment." The failure to develop this aspect of his legal argument, supported by relevant authority, effects a forfeiture of the claim.  See United States v. Callwood, 66 F.3d 1110, 1115 n.6 (10th Cir. 1995).  Mr. Fox does not challenge the constitutionality of the Oklahoma statute requiring the same jury to sit for both guilt and penalty phases.  See Okla. Stat. Ann. tit. 21 § 701.10.  Nor does he discuss (with reference to the relevant facts and authority) why it was

impossible for the jury to believe the core of Mr. Fowler's defense without discounting entirely the core of his own. <u>Dirden</u>, 28 F.3d at 1141.

The relevance of who specifically committed the murders in the penalty phase is not automatically apparent, given that <u>Enmund v. Florida</u>, 458 U.S. 782, 797 (1982), and <u>Tison v. Arizona</u>, 481 U.S. 137, 157 (1987), require only that the petitioner "himself kill[ed the victim], attempt[ed] to kill [the victim], or intend[ed] that a killing [of the victim] take place *or that lethal force will be employed*." <u>Enmund</u>, 458 U.S. at 797. (Emphasis added). Moreover, "major participation in the felony committed, combined with reckless indifference to human life is sufficient to satisfy the <u>Enmund</u> culpability requirement." <u>Tison</u>, 481 U.S. at 158. Ample evidence, including Mr. Fox's own confession, demonstrated that Mr. Fox intended that lethal force might be employed. Mr. Fox acquired firearms in preparation for the robbery of the Wynn's IGA, immediately prior to the murders, and admitted the killing to his roommate.

II. <u>Ineffective Assistance of Counsel</u>

Mr. Fox next claims that he was deprived of effective assistance of trial counsel. Specifically, he argues that trial counsel was deficient because he (i) implicated Mr. Fox during voir dire in such a way as to unfairly poison the jury against him; and (ii) failed to sufficiently inculpate the co-defendant, in order to exculpate Mr. Fox. Ineffective assistance claims are mixed questions of law and

fact reviewed by this court de novo. See Moore v. Reynolds, 153 F.3d 1086, 1096 (10th Cir. 1998).

a.      Ineffective Assistance during Voir Dire

Mr. Fox relies upon the following incidents to support his claim of ineffective assistance of counsel during voir dire. Trial counsel asked several times whether the venire could be open minded about the imposition of life imprisonment rather than the death penalty, should his client be convicted. One member of the venire[1] formed an opinion as to Mr. Fox's guilt based on the voir dire. This person was subsequently dismissed for cause. Moreover, the trial court expressed the opinion that Mr. Fox's counsel had gone too far in this line of questioning, to the detriment of his client.

To prevail on his ineffective assistance of counsel claim, Mr. Fox must demonstrate that (i) counsel's performance was objectively deficient and (ii) counsel's deficiency prejudiced the defense, depriving petitioner of a fair trial with a reliable result.    See Strickland v. Washington   , 466 U.S. 668, 687 (1984). To demonstrate constitutional deficiency, Mr. Fox must show that counsel's performance was completely unreasonable, not simply wrong.       See Hoxsie v. Kerby , 108 F.3d 1239, 1246 (10th Cir. 1997). Similarly, to show unconstitutional prejudice, Mr. Fox must demonstrate that but for counsel's errors, there is a

---

[1] In his brief, Mr. Fox refers improperly to this individual as a "juror."

reasonable probability that the result of the proceedings would have been different. See Strickland , 466 U.S. at 694. Mr. Fox bears a heavy burden in that he must overcome the presumption that his counsel's actions were sound trial strategy, in the context of his case. See id. at 689. Moreover, counsel's actions during voir dire are presumed to be matters of trial strategy. See Nguyen v. Reynolds, 131 F.3d 1340, 1349 (10th Cir. 1997).

Mr. Fox cannot overcome this burden. Like the counsel in Nguyen, Mr. Fox's attorney chose, as a strategic matter, to focus on whether potential jurors could give his client a fair trial. Id. Mr. Fox's attorney commented to this effect, in response to the judge's disapproval of his line of questioning:

> First of all, Your Honor, it is over our objection that we have the same jury determine guilt or innocence and punishment. We believe that even if we get past guilt or innocence we have to have some idea as to how these people will behave, if you will, on punishment. We have to ask certain questions so that we exercise our peremptory challenges and whether they could consider life imprisonment...

Tr. 340-341. Thus it is clear that Mr. Fox's counsel, properly recognizing that Oklahoma law requires the same jury to sit for both guilt and penalty phases of a trial for first degree murder, Okla. Stat. Ann. tit. 21 § 701.10, chose to focus on whether the jurors could be fair during the sentencing phase. This was neither unreasonable nor prejudicial, Nguyen, 131 F.3d at 1349, especially in view of the evidence that counsel undoubtedly was aware would later be admitted. It was an

- 13 -

entirely understandable strategic decision. We reject Mr. Fox's claim of ineffective assistance of counsel based on questions posed during voir dire.

b.    Counsel's Failure to Inculpate Co-Defendant

Mr. Fox next argues that counsel was ineffective in that he failed to inculpate the co-defendant, on the theory that had he done so, it would have proven that Mr. Fox "did not kill, attempt to kill or intend to kill any of the victims" Aplt. Br. at 16. Citing Enmund, Mr. Fox implies that had his counsel demonstrated that it was Mr. Fowler who committed the actual murders, Mr. Fox would have been exonerated from the first degree felony murder charge. In this vein, Mr. Fox argues counsel was ineffective for not refuting the state's blood spatter expert, who testified that two people were involved in the murders; for not making an opening statement; for failing to rebut Mr. Fowler's comments inculpating Mr. Fox during the guilt phase closing argument; and for failing to inculpate Mr. Fowler during the penalty phase closing argument.

An ineffective assistance claim may be resolved on either performance or prejudice grounds alone.   See Hatch v. Oklahoma, 58 F.3d 1447, 1457 (10th Cir. 1995). This is true in the instant case regarding Mr. Fox's arguments about counsel's failure to inculpate Mr. Fowler in the guilt phase of trial. Because Mr. Fox was charged with first degree felony murder, he would not have been exculpated by inculpating defendant Mr. Fowler in the murders themselves, since

- 14 -

Mr. Fox concedes that he participated in the underlying robbery. Okla Stat. Ann. tit. 21 § 701.7(B). Moreover, the state's blood spatter expert was cross-examined by Mr. Fowler's counsel, who elicited the expert's concession that it was possible, albeit improbable, that one person committed the murders. Thus, Mr. Fox has not demonstrated any prejudice resulting from his counsel's failure to orally contest the expert's conclusion that two people committed the murders.

Additionally, Mr. Fox has not shown that his counsel was constitutionally deficient. That is, he has not overcome the presumption of trial strategy regarding his counsel's waiver of opening statement in the guilt phase, the failure to rebut Mr. Fowler's closing argument inculpating Mr. Fox in the guilt phase, and the failure to inculpate Mr. Fowler in the penalty phase. For counsel's actions to rise to the level of constitutional ineffectiveness, his strategic decisions must have been "'completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy.'" Hatch, 58 F.3d at 1459 (quoting United States v. Ortiz Oliveras, 717 F.2d 1, 4 (1st Cir. 1983)).

While opening and closing statements are not to be lightly waived in a capital case, it is well-settled that the decision to waive an opening or closing statement is a commonly adopted strategy, and without more, does not constitute ineffective assistance of counsel. See Nguyen, 131 F.3d at 1350; see also United States v. Haddock, 12 F.3d 950, 955 (10th Cir. 1993); United States v. Miller, 907

F.2d 994, 1000 (10th Cir. 1990).  The record indicates Mr. Fox's counsel chose to waive closing argument during the guilt phase as a strategic matter as well.  Mr. Fox's counsel initially believed that waiving closing argument in the guilt phase would preclude the State from presenting rebuttal argument aimed at Mr. Fox. When the judge made it clear that this was not an accurate understanding of the trial procedures, Mr. Fox's counsel stated that he nevertheless thought that if he made a closing argument rebutting Mr. Fowler's arguments inculpating Mr. Fox, he would waive his objections to those arguments on Eighth Amendment grounds. Finally, Mr. Fox's counsel's failure to argue that Mr. Fox was innocent during the penalty phase was a reasonable strategy, especially in light of the overwhelming evidence militating in favor of Mr. Fox's guilt.  Instead, Mr. Fox's counsel understandably shifted the focus from Mr. Fox's innocence (or Mr. Fowler's guilt) to the humanity of his client.  It was a reasonable strategy to do so, both to maintain credibility with the jury, and to try to emphasize the mitigating factors presented. Thus, following Hatch, we find that counsel's decisions amounted to a reasonable trial strategy, and as such, do not rise to the level of unconstitutional deficiency.

III.    Admission of Misleading Testimony

Mr. Fox next claims that the state court permitted the jury to consider misleading evidence, thus violating his right to due process.  Specifically, he

alleges that the trial court impermissibly admitted the testimony of the state's forensic experts on blood, blood spatter, and hair evidence. Additionally, he asserts that the trial court impermissibly admitted forensic evidence regarding an article of clothing discovered with blood on it.

Mr. Fox's claims are properly characterized as a due process challenge to the state evidentiary rulings. On habeas review, we will not disturb the state court's evidentiary rulings unless the appellant demonstrates that the court's error was "so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." Williamson v. Ward, 110 F.3d 1508, 1522 (10th Cir. 1997). Mr. Fox has not demonstrated any error in the admission of this evidence, much less that the admission of the above evidence rendered the proceeding fundamentally unfair. Mr. Fox simply disagrees with the testimony.

As for the testimony of the various forensic experts, they were all adequately qualified to testify, See Saathoff v. Hesse, No. 95-1130, 1995 WL 749722, at **2 (10th Cir. Dec. 19, 1995), and were subject to rigorous cross-examination. Weaknesses in the testimony of each of the state's forensic experts were sufficiently pursued and developed on cross-examination. First, the state's forensic blood expert witness admitted on cross-examination that the blood tests performed were presumptive and not conclusive. That is, he openly stated that he

was unable to determine conclusively whether the stains were of animal or human origin. Next, the "blood spatter" expert who recreated the murder scene for the jury admitted on cross-examination that his account was not the only possible description. Rather, he conceded that it was possible, though not plausible, that one person could have committed the homicides. Moreover, this forensic expert stated clearly that he relied on data produced from the aforementioned "presumptive" blood testing, the validity of which was discussed and tested at length. Finally, the state forensic hair expert's opinions were thoroughly tested on cross-examination, and a defense expert with a differing view was presented during the trial to rebut her claims. The state's hair expert candidly admitted that she was rushed in completing her testing. The credibility of these witnesses was a question exclusively for the jury.

Furthermore, the admission of evidence regarding blood found on an article of clothing, a white polo shirt, was not error and in any event, did not render the entire trial fundamentally unfair. The record reflects that the evidence bearing on what Mr. Fox wore the night of the murder was conflicting; the shirt was discovered behind the front seat of the vehicle driven by Mr. Fox the night of the murders. It was certainly relevant for the State to introduce evidence from forensic experts that there was blood on the shirt, most likely wiped off from the knife used in the murder. It seems that Mr. Fox is actually objecting to the weight

accorded to the evidence admitted by the state trial court; this is not of constitutional dimension, and fails to satisfy our standard of review of state evidentiary rulings on habeas.

IV.    Admission of Pre-trial Statements to Police

Next, Mr. Fox claims that the trial court failed to suppress pre-trial custodial statements to the police in violation of his Fifth and Fourteenth Amendment rights. After his arrest, and while in custody, two police officers approached Mr. Fox in the absence of his attorney, removed him from his cell, and gave him their business cards. The officers were aware that Mr. Fox had elected to remain silent, and that he had requested his attorney be present during any interrogation. The record reflects that as the officers were leaving, Mr. Fox indicated to them that he wanted to talk to them. The officers advised Mr. Fox of his right to counsel, and asked him if he wanted to waive it. Mr. Fox responded that while he preferred his counsel be present, he was nevertheless willing to talk with them[2]. The statements taken during this interrogation were not admitted at trial. However, evidence was recovered as a result of information thus gathered. Mr. Fox argues that the officers' actions constitute interrogation in violation of

---

[2] Mr. Fox stated: "My case is not getting any better. It is getting worse, I mean. I would like it if the lawyer was on his way. While I am talking to you now, I mean, I don't mind him not being here, you know, but I am ready to talk to you all now." State's exhibit 108(A) at 2 (admitted only for purposes of *in camera* hearing).

his Fifth Amendment and Fourteenth Amendment rights. Moreover, Mr. Fox asserts, citing Minnick v. Mississippi, that he was legally incapable of waiving his right to counsel, once invoked, without his counsel present.

We find his claims unpersuasive. The officers' initial conduct did not constitute "interrogation" under controlling standards. Under Rhode Island v. Innis, interrogation extends only to words or actions that the officers should have known were reasonably likely to elicit an incriminating response. 446 U.S. 291, 301 (1980); see also United States v. Roman-Zarate, 115 F.3d 778, 782 (10th Cir. 1997). In the instant case, the officers merely introduced themselves to Mr. Fox and left him their business cards. The fact that Mr. Fox was in custody does not automatically render this exchange an interrogation. See Innis, 446 U.S. at 299. Such interaction between Mr. Fox and the police constituted conduct "normally attendant to arrest and custody," and was not the "functional equivalent" of interrogation. See id. at 301. Thus, we agree with the Oklahoma Court of Criminal Appeals in its conclusion that the officers' actions were not evocative within the meaning of Innis. See Fox v. State, 779 P.2d 562, 569 (Okla. Crim. App. 1989).

It is certainly true that once an individual has expressed his desire only to deal with police through counsel, all interrogation absent counsel will be deemed involuntary. See Edwards v. Arizona, 451 U.S. 477, 484-85 (1981); United States

v. Giles, 967 F.2d 382, 385 (10th Cir. 1992). However, if the individual voluntarily initiates further communication with law enforcement officials, he can effectively waive his previously invoked right to counsel. See Oregon v. Bradshaw, 462 U.S. 1039, 1045-46 (1983); Cooks v. Ward, 165 F.3d 1283, 1288 (10th Cir. 1998). In the instant case, the facts presented at trial make it clear that Mr. Fox reinitiated contact with the officers as they were leaving. Reviewing his waiver de novo, Miller v. Fenton, 474 U.S. 104, 112 (1985), we agree with the district court's finding that Mr. Fox's waiver was voluntary. The evidence demonstrates that Mr. Fox's waiver "was a product of free and deliberate choice...and was made in full awareness of the nature of the right being waived and the consequences of waiving." Cooks, 165 F.3d at 1288. Like the defendant in Cooks, Mr. Fox was fully appraised of his rights, he had previously exercised his right to remain silent absent his counsel (demonstrating his understanding of the right), and there is no evidence of coercion or compulsion on the part of the officers. Id.

Mr. Fox argues that it is legally impossible for an individual to waive his right to counsel, once invoked, absent counsel's presence. This badly misconstrues Minnick v. Mississippi, 498 U.S. 146 (1990). Minnick stands for the proposition that once counsel is requested, interrogation must cease, and law enforcement officials may not reinitiate interrogation without counsel present,

regardless of whether the accused has conferred with his attorney. See id. at 153. Minnick does not bear on the instant situation, namely, where the accused voluntarily reinitiates contact with law enforcement officials. Because Mr. Fox voluntarily reinitiated contact with law enforcement officials, and validly waived his right to counsel, his instant claim does not warrant relief.

V.      "Heinous, Atrocious, or Cruel" Aggravator

Mr. Fox argues next that the jury instruction given by the state trial court regarding the "heinous, atrocious, or cruel" aggravator is unconstitutional. Moreover, he argues that there was insufficient evidence to support the jury's finding of the above aggravator.

This identical challenge has been considered and rejected by this court on several occasions, see Cooks, 165 F.3d at 1289-90; see also Hatch, 58 F.3d at 1468-69; Duvall v. Reynolds, 139 F.3d 768, 792-93 (10th Cir. 1998), and binds this panel in the instant case. See Cooks, 165 F.3d at 1289 (citing United States v. Foster, 104 F.3d 1228, 1229 (10th Cir. 1997).

Next we consider whether given the evidence presented, viewed in the light most favorable to the prosecution, any rational trier of fact could have found the aggravating circumstance beyond a reasonable doubt. See LaFevers v. Gibson, 182 F.3d 705, 723 (10th Cir. 1999) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)). This is a question of law which we review de novo. See, e.g., Romero

v. Tansy, 46 F.3d 1024, 1032 (10th Cir. 1995).

John Barrier's murder was "especially heinous, atrocious, or cruel." It was marked by torture and serious physical abuse, evidenced by proof of conscious physical suffering. Sufficient evidence was presented to support this conclusion. The State's forensic expert testified that Mr. Barrier had defensive wounds on his hands, consistent with those one suffers in a fight for his life. Tr. 1677. Additionally, the detective who interviewed co-defendant Mr. Fowler testified that Mr. Fowler heard Mr. Barrier cry out and beg for his life. Tr. 1877. This is strong evidence of conscious physical suffering. Thus, Mr. Fox's claim for relief on this ground fails.

VI.    Prosecutorial Misconduct

Mr. Fox next argues that he was subjected to unconstitutional prosecutorial misconduct. Specifically, he takes issue with the prosecutor's comments in two ways. First, he objects to the prosecutor's comments regarding the weight that should be accorded to the mitigating evidence presented. Second, he objects to the prosecutor's comments regarding the procedural and discretionary hurdles that are required before seeking the death penalty. Finally, Mr. Fox argues that he is entitled to a rehearing because the state and district courts applied the incorrect standard in reviewing his claim of prosecutorial misconduct.

Prosecutorial misconduct claims present mixed issues of law and fact and

are reviewed by this court de novo.  See Fero v. Kerby, 39 F.3d 1462, 1473 (10th Cir. 1994).  Mr. Fox will be entitled to habeas relief only if he can establish that the prosecutor's misconduct or improper remarks infected the trial to such an extent that it resulted in a fundamentally unfair trial.  See Donnelly v. DeChristoforo, 416 U.S. 637, 645 (1974).

The prosecutor in the instant case made several comments that Mr. Fox regards as tantamount to instructing the jury that it should ignore mitigating evidence.  Namely, the prosecutor said:

> I tell you today that what these two were prior to 1985 is irrelevant. Tr. 2345.

> Why these defendants are what they are may be a good field of research, but it's no mitigation or justification for what they did.  It doesn't change them back and it doesn't mitigate what they did. Tr. 2348.

> Is it adequate punishment just to lock them up on a clean bed with clean clothes and three meals a day? Is that adequate punishment for taking three lives?  Tr. 2358.

Mr. Fox argues that these comments violate the dictates of Hitchcock v. Dugger, 481 U.S. 393 (1987), which reversed a death sentence because the advisory jury was instructed not to consider, and the sentencing judge refused to consider, evidence of nonstatutory mitigating circumstances.

The facts of Mr. Fox's case are distinguishable.  Only the court instructs the jury.  The prosecutor merely argues to the jury.  In this case, the prosecutor's

comments bore on the weight to be accorded to the mitigating evidence. The comments did not contradict the court's instructions and did not preclude the jury from considering this evidence. The court is permitted to shape and structure the jury's consideration of mitigating evidence, provided that it does not preclude the jury from giving effect to the mitigating evidence. See Buchanan v. Angelone, 118 S.Ct. 757, 761 (1998). In the instant case, the prosecutor merely commented on the weight that should be accorded to the mitigating factors. He did not suggest that the jury was not permitted to consider the factors. It is well-settled that the prosecutor may comment on "information about the defendant, his character, and the circumstances of his offense made known to the jury throughout the bifurcated trial." Coleman v. Brown, 802 F.2d 1227, 1239 (10th Cir. 1986). The trial court clearly instructed the jury that "the determination of what are mitigating circumstances is for you as jurors to resolve under the facts and circumstances of this case." O.R. at 202. Also, after listing thirty factors that Mr. Fox offered in mitigation, the trial court further instructed the jury that "whether these circumstances existed, and whether these circumstances are mitigating, must be decided by you." O.R. at 204. The prosecutor's remarks did not constitute misconduct that prejudiced Mr. Fox so as to deny him a fair trial consistent with due process.

Mr. Fox further claims that the following comments made by the prosecutor

diminished the jury's sense of responsibility in violation of the rule set forth in

Caldwell v. Mississippi, 472 U.S. 320 (1985):

> I had to make the decision to seek the death penalty.
> Before I could do that, the Edmond police department and
> the Oklahoma City police department had to bring the
> evidence to me upon which I could justify such a decision.
> And all of you, you, the jury and my staff and the police
> departments and their experts did what we did because it's
> our responsibility and duty.

Tr. at 2350. Mr. Fox misconstrues Caldwell. In that case, the court held that the

prosecutor could not suggest to the jury that it was not the final arbiter of the

defendant's fate, given that there was an appeals process in which their

determination was reviewable. See Caldwell, 472 U.S. at 328-329. In this case,

the prosecutor told the jury that he did not undertake the decision to seek the

death penalty lightly, and pointed to the different elements that went into making

his decision. This is a permissible line of commentary. See Moore v. Gibson,

1999 WL 765893, *19-20 (10th Cir. 1999) (holding that it was not a violation of

Caldwell for the prosecutor to note "a number of things have to happen" before a

death sentence is sought); see also Sellers v. Ward, 135 F.3d 1333, 1343 (10th

Cir. 1998) (prosecutor's suggestion that he personally approved of death penalty

and statements that "many hurdles had to be jumped before a capital murder trial

could ever occur" were insufficient to suggest that anyone other than the jury had

the burden to make ultimate sentencing decision). Thus, we reject Mr. Fox's

claims based on a <u>Caldwell</u> violation.

The district court reviewed the merits of Mr. Fox's claim of prosecutorial misconduct, and properly applied the <u>Donnelly</u> standard in reaching its determination. Mr. Fox is not entitled to re-sentencing on these grounds.

VII. <u>Jury Instructions Regarding Option of Life Sentence</u>

Mr. Fox next argues that he is entitled to relief because the jury instructions given did not explicitly inform the jury that they were not required to give a sentence of death, even if they made a determination that the aggravating factors outweighed the mitigating factors. Mr. Fox properly recognizes that we have rejected this very claim in <u>Duvall v. Reynolds</u>, 139 F.3d 768, 789-91 (10th Cir. 1998). He urges that we nevertheless depart from our earlier holding given that the court there failed to consider the relevance of Oklahoma's revision of its uniform jury instructions in 1994, to include the instruction he sought at trial. This argument is likewise unavailing; the court squarely passed on this contention in <u>Bryson v. Ward</u>, 187 F.3d 1193, 1207 (10th Cir. 1999). In <u>Bryson</u>, we held that while the revised jury instruction clearly sets forth the settled law, the failure to give such an instruction is not constitutional error. <u>Id</u>. As stated previously, this resolution binds this panel in the instant case.

VIII. <u>Restriction of Cross-Examination</u>

Mr. Fox argues that he is entitled to relief because the state trial court

unconstitutionally restricted his cross-examination of the state's forensic expert regarding hair evidence. Mr. Fox sought to elicit from her, in cross-examination that there was a delay in her analysis due to her large caseload. The court sustained the state's objection to this question, and held that while the inquiry was relevant, any probative value was outweighed by the prejudice that the defendant would suffer by implying that there was an unusually high rate of crime in the county where the murders took place.

As stated previously, Mr. Fox faces a demanding burden in raising a challenge to the trial court's evidentiary ruling on habeas review. That is, relief is not available on this ground unless Mr. Fox shows that the entire proceeding was rendered fundamentally unfair by the trial court's limit on cross-examination. See Sellers, 135 F.3d at 1342. The inquiry focuses on the materiality of the excluded evidence to the presentation of Mr. Fox's defense, and ultimately turns on whether or not the trial court deprived Mr. Fox of an opportunity for effective cross examination. Id.

Mr. Fox has not satisfied this burden. We are not persuaded that the entire trial was rendered fundamentally unfair by the trial court's restriction on Mr. Fox's cross-examination. Mr. Fox's counsel was permitted to elicit that the state's forensic expert had been under pressure to complete her analysis, and as such, her work was hurried. Additionally, the state's expert was thoroughly

cross-examined concerning her conclusions. Moreover, Mr. Fox's co-defendant presented his own expert testimony directly challenging the state expert's opinions. In light of the foregoing, prohibiting Mr. Fox's inquiry into the delay in the forensic expert's analysis did not have the effect of rendering the entire proceeding fundamentally unfair. Thus, Mr. Fox's claim for relief on this ground fails.

IX.    "Avoid Arrest or Prosecution" Aggravator

Mr. Fox next seeks relief on the grounds that the state trial court applied the "avoid arrest or prosecution" aggravating circumstance in an unconstitutionally vague and overbroad manner. However, the arguments Mr. Fox advances in support of this proposition are more accurately characterized as a challenge to the sufficiency of the evidence supporting the finding of this aggravating circumstance. That is, Mr. Fox merely argues that there is nothing in the record to support this aggravating circumstance.

To support the finding of this aggravating circumstance, the focus is on the defendant's intent, whether proved by the defendant's own statement or through circumstantial evidence. See Boyd v. Ward, 179 F.3d 904, 923 (10th Cir. 1999). In the instant case, there was ample evidence from which a rational fact finder could conclude that the aggravating circumstance was present. Neither Mr. Fox nor Mr. Fowler attempted to conceal their identities. Mr. Fox had worked at

the Wynn's IGA previously, and it is thus reasonable to infer that he knew one or more of the victims and that they could have identified him. Moreover, as the federal district court observed, Mr. Fox and Mr. Fowler committed these crimes in the early morning hours, when it was unlikely that other customers would be present. The robbery was planned for a time when there would be a minimal number of employees present. All of the foregoing is persuasive circumstantial evidence supporting a finding of the aggravating circumstance in question. Mr. Fox's claim for relief on this ground fails.

X.    "Continuing Threat" Aggravator

Mr. Fox next argues that the "continuing threat" aggravating circumstance, as used in Oklahoma is constitutionally deficient, insofar as it would apply to every defendant convicted of murder. Mr. Fox properly recognizes that this court has upheld the constitutionality of this aggravating factor in Nguyen v. Reynolds, 131 F.3d 1340, 1353 (10th Cir. 1997). He nevertheless asks that we revisit the issue and grant relief. Even if we were so inclined, we are unable to do so, given that the determination of the Nguyen panel binds this panel.

XI.   Jury Instruction Regarding Unanimity Requirement for Mitigating Factors Determination

Mr. Fox next argues that the trial court's failure to instruct the jurors that they need not be unanimous in their findings of mitigating evidence was error of constitutional magnitude warranting relief on habeas. This court has squarely

addressed and rejected this claim in <u>LaFevers v. Gibson</u>, 182 F.3d 705 (10th Cir. 1999), in which we held that "a trial court need not, however, expressly instruct a capital sentencing jury that unanimity is not required before each juror can consider a particular mitigating circumstance." <u>Id</u>. at 719. This resolution is binding on this panel.

XII.    <u>Evidentiary Hearing</u>

Finally, Mr. Fox claims that he is entitled to an evidentiary hearing to develop his claims that the jury was permitted to consider misleading evidence and ineffective assistance of counsel. To establish entitlement to an evidentiary hearing under pre-AEDPA standards, Mr. Fox must "make allegations which, if proved, would entitle him to relief." <u>See</u> <u>Stouffer v. Reynolds</u>, 168 F.3d 1155, 1168 (10th Cir. 1999). If Mr. Fox has made these requisite allegations, he is entitled to a hearing only if there is a factual dispute, and he did not receive a full and fair evidentiary hearing in a state court. <u>See</u> <u>Miller v. Champion</u>, 161 F.3d 1249, 1252 (10th Cir. 1998). Following our own independent review, we agree with the district court that the issues here raised by Mr. Fox were properly resolved on the basis of the record and the law, and as such, an evidentiary hearing is not required. <u>See</u> <u>Castro v. Ward</u>, 138 F.3d 810, 832 (10th Cir. 1998).

AFFIRMED.