**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 11, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

MICHAEL LEE MONTOYA,

      Defendant-Appellant.

No. 09-1551

(D. of Colo.)

(D.C. No. 09-CR-288-CMA)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN**, **McKAY**, and **TYMKOVICH**, Circuit Judges.[**]

---

Michael Lee Montoya was convicted by a federal jury on five counts related to bank robbery. He appeals his conviction and sentence. Montoya's counsel, finding no meritorious grounds for an appeal, moves to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967). We have jurisdiction

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

under 28 U.S.C. § 1291.  We GRANT counsel's motion to withdraw and DISMISS Montoya's appeal.

## I.  Background

In April 2009, a man, wearing a bright blue hat and carrying a black Wells Fargo bank bag, robbed the Pine River Valley Bank in Durango, Colorado.  After presenting a lengthy demand note to a teller, he showed her a hypodermic syringe with an orange top.  He then fled after taking about $4,000 from her.

The robber's description was circulated to neighboring banks in Durango. Five weeks later, the branch manager of the Bank of San Juans, which is directly across the street from the Pine River Valley Bank, noticed a man matching the robber's description acting suspiciously outside her building.  The man was wearing a bright blue hat with an "F" logo on the back.  After looking through the glass bank doors and walking away, the man looped around and began approaching the side of the bank from an alley.  At this point, the branch manager called 911, and she asked a teller to watch where the man was walking. The teller lost sight of the man after he passed the drive-through window, but he never entered the bank.

An hour later, two men robbed the Community Banks of Colorado in Cortez, Colorado.  While his accomplice waited in the getaway vehicle, a tan and maroon Ford Bronco, one of the men, wearing a blue Florida Gators baseball cap, entered the bank.  He then pulled a handgun on a teller and demanded money.

After taking $4,576, the robber fled, escaping in the getaway vehicle. As the Ford Bronco sped out of an adjacent parking lot, its front passenger-side tire struck a curb, and a cigarette butt and tire marks were left at the scene.

Eyewitnesses saw the robber's escape, and a description of the Ford Bronco was aired to law enforcement. Shortly thereafter, an off-duty officer stopped a similar vehicle, with scuff marks on a tire that were consistent with recently striking a curb. After one of the eyewitnesses identified the stopped Ford Bronco as the getaway vehicle, the driver, James McBride, was arrested. McBride's vehicle contained a cell phone and a traffic ticket from the morning of the bank robbery, both of which linked him to Montoya. McBride later confessed to involvement in the Community Banks robbery, the Pine River Valley Bank robbery, and the attempted robbery of the Bank of San Juans. He named Montoya as his co-conspirator and testified against him at trial.

In addition, both of the robbed tellers identified Montoya in photo line-ups. The branch manager and teller at the Bank of San Juans testified about their observations of the suspicious man outside their building. Moreover, the videotape of a nearby business demonstrated that, during the attempted robbery of that bank, a tan and maroon Ford Bronco was circling the area.

Finally, investigating officers obtained search warrants and other court orders that uncovered additional evidence. Montoya's cell phone records indicated many calls and texts between Montoya's phone and the phone recovered

-3-

in McBride's vehicle, including an early-morning text message stating, "Whenever you are ready, Loco." Montoya's phone was eventually recovered inside his yellow Dodge pickup truck, the vehicle McBride was driving on the morning of the robberies when he was ticketed. A search of Montoya's family home in Farmington, New Mexico, produced circumstantial evidence of bank hold-up notes, bank bags, disguises, hypodermic needles with orange caps, and correspondence linking Montoya to the crimes.

In June 2009, a federal grand jury indicted McBride and Montoya on one count of armed bank robbery in connection to the Community Banks robbery. In August 2009, a superseding indictment added a second count of armed bank robbery based on the Pine River Valley Bank robbery, and a count of using a firearm during a crime of violence based on the Community Banks robbery. Less than two weeks later, a second superseding indictment was issued, adding two more counts: attempted bank robbery in connection with the Bank of San Juans incident, and conspiracy to commit bank robbery.

McBride entered into a plea agreement with the government in exchange for cooperating and testifying against Montoya; he received a sentence of 3.5 years. Montoya pleaded not guilty and was tried before a federal jury, which convicted him of all five counts. Although the government strongly supported the presentence investigation report (PSR) recommendation of a sentence of 30 years'

imprisonment, the district court sentenced Montoya to a below-guidelines sentence of 20 years' imprisonment.

Following Montoya's timely notice of appeal, his counsel filed an *Anders* brief explaining that, after reviewing the record and completing the necessary research, he determined the appeal had no merit. Montoya was granted additional time to file a response to that brief, but he has not done so. The government filed a notice of its intention not to file an answer brief in this appeal.

## II. Discussion

Under *Anders v. California*, 386 U.S. 738 (1967), defense counsel may "request permission to withdraw where counsel conscientiously examines a case and determines that any appeal would be wholly frivolous." *United States v. Calderon*, 428 F.3d 928, 930 (10th Cir. 2005). If counsel makes that determination, he may "submit a brief to the client and the appellate court indicating any potential appealable issues based on the record." *Id.* The client may also submit arguments to the court in response. We must then fully examine the record "to determine whether defendant's claims are wholly frivolous." *Id.* If we find they are, we may dismiss the appeal.

The *Anders* brief submitted by Montoya's counsel identifies three issues that Montoya would like to appeal: (1) the evidentiary decision to permit testimony that bank hold-up notes were found in the Farmington residence, (2) the

effectiveness of trial counsel's assistance, and (3) the reasonableness of the sentence. We address each of these in turn.

## A. The Bank Hold-Up Notes

Evidentiary rulings "generally are committed to the very broad discretion of the trial judge, and they may constitute an abuse of discretion only if based on an erroneous conclusion of law, a clearly erroneous finding of fact or a manifest error in judgment." *Webb v. ABF Freight Sys., Inc.*, 155 F.3d 1230, 1246 (10th Cir. 1998). Even if the court finds an erroneous evidentiary ruling, a new trial will be ordered only if the error affects the substantial rights of the party. *Id.* (citing *Hinds v. GM*, 988 F.2d 1039, 1049 (10th Cir. 1993)).

The government has not contended any of the hold-up notes found in the Farmington residence were used during the Pine River Valley Bank robbery. But both the demand note used during the robbery and the discovered hold-up notes were lengthy. On the third day of trial, outside the presence of the jury, Montoya's defense counsel objected to the admission of the hold-up notes' content on the grounds that the notes contained inflammatory language and could prejudice the jury. But defense counsel indicated he was willing to stipulate to the fact that hold-up notes were found at the house, so long as their content was not revealed.

Later that day, after reviewing the hold-up notes, the district court excluded the content of the notes after finding they "contain explicit information that may

lead the jury to infer that the author or owner of the notes participated or planned to participate in bank robberies which are not charged in this case." R., Vol. 3 at 425. Thus, the notes were received as exhibits but were not shown to the jury. But the court permitted discussion or testimony regarding the existence of the notes and the fact they were taken from the residence. *Id.*

The district court did not abuse its discretion in permitting testimony regarding the discovery of bank hold-up notes. The existence of the notes was highly probative, since it linked Montoya to the Pine River Valley Bank robbery. The length of the discovered notes was also relevant, since it corresponded to the length of the note used in that robbery.[1] Because the prejudicial effect of these hold-up notes was greatly diminished when the actual content of the notes was excluded, the permitted testimony was not improper.

## B. The Effectiveness of Trial Counsel

Montoya contends his counsel's performance was objectively deficient and deprived him of a fair trial with a reliable result. *See Fox v. Ward*, 200 F.3d 1286, 1295 (10th Cir. 2000) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). In a letter requesting a time extension to file a response to the *Anders* brief, Montoya avers his counsel "rushed the case to trial and didn't properly

---

[1] A police officer involved in the search of the residence, testified that three hold-up notes, each typed, were found. One note was nearly an entire page, another was about two-thirds of a page, and the third was a little less than half a page in length. Similarly, the Pine River Valley Bank teller testified she only skimmed the demand note that was given to her because it was fairly long.

investigate an alibi defense," although he gives no further details as to what this alibi defense would be. In response, defense counsel contends Montoya was a voluntary and knowing participant in a strategic decision to push speedy time requirements. The objective of this strategy was to force the government to prepare its multiple bank robbery cases against Montoya in a single trial, which would not give the government adequate time to complete DNA matching and other forms of identification.

To prevail on his ineffective assistance of counsel claim, Montoya "must overcome the strong presumption that 'counsel's conduct falls within the wide range of reasonable professional assistance.'" *United States v. Smith*, 10 F.3d 724, 728 (10th Cir. 1993) (quoting *Strickland*, 466 U.S. at 689). Furthermore, strategic decisions are constitutionally ineffective only if they are "completely unreasonable, not merely wrong, so that they bear no relationship to a possible defense strategy." *Fox*, 200 F.3d at 1296. Indeed, under *Strickland*, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91.

Montoya's ineffective assistance of counsel claims is not appropriate for review by this court on direct appeal, due to the insufficiency of the record.

Except in rare circumstances not present here, "[i]neffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal." *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc). When ineffective assistance of counsel claims are pursued on direct appeal, they "are presumptively dismissible, and virtually all will be dismissed." *Id.* This rule is based on the following rationale:

> A factual record must be developed in and addressed by the district court in the first instance for effective review. Even if evidence is not necessary, at the very least counsel accused of deficient performance can explain their reasoning and actions, and the district court can render its opinion on the merits of the claim.

*Id.*

Because the record is insufficient for us to properly assess it on direct appeal, we dismiss Montoya's ineffective assistance of counsel claim.

## C. The Sentencing Decision

We review sentences for procedural and substantive reasonableness. *See United States v. Kristl*, 437 F.3d 1050, 1053 (10th Cir. 2006). When a defendant is sentenced within a properly-calculated guidelines range, the sentence "is entitled to a rebuttable presumption of reasonableness." *Id.* at 1054. "The defendant may rebut this presumption by demonstrating that the sentence is unreasonable in light of the other sentencing factors laid out in [18 U.S.C.] § 3553(a)." *Id.* at 1055. These factors include "the nature and circumstances of the offense[,] the history and characteristics of the defendant[,] the need for the

sentence imposed . . . to afford adequate deterrence to criminal conduct[, and] the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a).

Montoya's counsel asserts the district court calculated the guidelines range properly and made no procedural errors.  We agree, and thus we presume the sentence to be reasonable.  The advisory guidelines sentencing range was 30 years' to life imprisonment.  However, the district court sentenced Montoya to only 20 years' imprisonment, significantly below the advisory range.  The court explained:

> Although a career offender, the Court believes the guideline range is unreasonable when considering 18 U.S.C. § 3553 factors.  Four of the defendant's 9 felonies were committed more than 10 years ago, when he was 18, and during what appears to be a 2½ month crime spree.

R., Vol. 1 at 186.

Although McBride received a much shorter sentence than Montoya, the district court properly concluded the difference did not constitute a disparity under § 3553 because the two defendants were not similarly situated.  McBride had previously been convicted of only one drug possession felony, and he pleaded guilty to a single count of aiding and abetting armed robbery. In contrast, Montoya had been convicted of nine previous felonies, and he was tried and found guilty of five serious counts, including two counts of armed robbery.

Not only did the district court properly consider § 3553 factors, but it sentenced Montoya to a decade below the minimum advisory sentence in light of them.  As a result, the sentence is substantively reasonable.

### III.  Conclusion

We conclude no meritorious appellate issue exists.  Accordingly, we GRANT counsel's motion to withdraw and DISMISS Montoya's appeal.  Montoya's motion requesting appointment of new counsel is DENIED.

ENTERED FOR THE COURT

Timothy M. Tymkovich
Circuit Judge