FILED
United States Court of Appeals
Tenth Circuit

October 6, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

　　　　Plaintiff-Appellee,

　　v.

DEAN MILTON DORMER,

　　　　Defendant-Appellant.

No. 11-3122

(D. of Kan.)

(D.C. Nos. 10-CV-4026-JAR and
5:02-CR-40157-JAR-7)

---

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

---

Before **O'BRIEN**, **McKAY**, and **TYMKOVICH**, Circuit Judges.[**]

---

Dean Milton Dormer, a federal prisoner, seeks a certificate of appealability (COA) to appeal the district court's denial of his 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence. Dormer is serving a 151-month sentence for conspiring to distribute marijuana, and he seeks relief on the grounds that he was denied effective assistance of counsel at trial. We conclude the district court properly denied Dormer's § 2255 motion.

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

Having jurisdiction pursuant to 28 U.S.C. § 1291, we DENY the application for a COA and DISMISS the appeal.

## I. Background

Dormer was involved in a wide-ranging conspiracy to ship marijuana from the southwestern United States to the Cleveland, Ohio area for sale. The conspiracy began to unravel in late 2002, when a private plane carrying 564 pounds of marijuana touched down for refueling in Salina, Kansas. Acting on a tip, officers searched the plane and, after discovering the marijuana, arrested its occupants. As the investigation unfolded, the scope and breadth of the conspiracy became more widely known, leading to additional arrests. Dormer was arrested in 2003 after a failed drug transaction.[1]

In mid-2005, a federal grand jury returned a five-count Third Superseding Indictment, charging Dormer with conspiring with each of ten other named co-defendants to distribute controlled substances, including but not limited to more than 1,000 kilograms of marijuana and more than 5 kilograms of cocaine, in violation of 21 U.S.C. § 846. Counts two through four did not pertain to Dormer, but he was named in count five, which charged criminal forfeiture of assets attributable to the conspiratorial organization.

---

[1] A more complete recitation of the underlying facts can be found in this court's decision on Dormer's direct appeal. *See United States v. Dormer*, No. 06-3310 (10th Cir. Nov. 21, 2008) (filed under seal).

-2-

Dormer was tried along with a co-defendant.  Before trial, Dormer's lawyer filed a motion to sever Dormer's trial from his co-defendant, which the court denied without prejudice.  Dormer's attorney never renewed his motion to sever.  After trial, the jury returned a guilty verdict for both Dormer and his co-defendant.  In addition to finding Dormer guilty of conspiring to distribute marijuana, the jury determined that he conspired to distribute "100 kilograms or more but less than 1,000 kilograms" of marijuana.  Accordingly, Dormer was sentenced to 151 months' incarceration.

Dormer filed a direct appeal and we affirmed his conviction and sentence.  Dormer filed a petition for writ of certiorari with the United States Supreme Court, which was denied.  Dormer timely filed his § 2255 motion with the district court.  The district court denied his motion and Dormer now seeks a COA pursuant to 28 U.S.C. § 2253(c)(1).

## II.  Discussion

Dormer argues he was denied effective assistance of counsel because his attorney erroneously chose to cross-examine a witness despite having no strategic reason for doing so.

To obtain a COA, Dormer must demonstrate "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Making that showing requires demonstrating that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or

that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003) ("The COA inquiry asks only if the District Court's decision was debatable.").

A successful claim of ineffective assistance of counsel must meet the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 690 (1984). First, the defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* "The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* This standard is "highly demanding," *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986), and strategic or tactical decisions of counsel are presumed correct unless they were "completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy." *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (internal quotation and citation omitted). The reasonableness of the challenged conduct must be evaluated from counsel's perspective at the time of the alleged error; "every effort should be made to 'eliminate the distorting effects of hindsight.'" *Edens v. Hannigan*, 87 F.3d 1109, 1114 (10th Cir. 1996) (quoting *Strickland*, 466 U.S. at 689).

Second, the defendant must show that his counsel's deficient performance actually prejudiced his defense by showing "there is a reasonable probability that,

-4-

but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A defendant must demonstrate both *Strickland* prongs to prevail, and a failure to prove one is dispositive. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (quoting *Strickland*, 466 U.S. at 697).

Dormer argues that his trial counsel's decision to cross-examine a government witness was reversible error. Dormer concedes that an attorney's choice of questions during cross-examination or deciding *not* to call or cross-examine a witness in the first place are tactical decisions and presumptively reasonable. But he argues there was no strategic or tactical purpose for choosing to cross-examine the witness, since the testimony on direct examination had not harmed his case.

Specifically, Dormer points to the following exchange as the most troubling, in which the witness recounts her astonishment that Dormer would call the police to report his vehicle stolen:

Q.    [Dormer's Trial Counsel:] Did [named co-conspirator] know who Dean [Dormer] was?

A.    [Witness:] Yes.

Q.    Because he had leased the car . . . because he had leased the car from Dean [Dormer], correct?

A.    Correct.

Q. You testified on direct that it didn't make any sense to anybody.  What was that a reference to?

A. **I mean, being that Dean [Dormer] knows what everybody's doing, why would he call the police when – I mean, he knew who he leased the car to.  I mean, that was kind of silly on his behalf.**

Q. Yes.  Well, doesn't that lead you to the conclusion that he didn't know what was going on?

A. No, it doesn't.

Q. Okay. But you had never heard of him, correct?

A. Not up until that point, no.

R. Doc. 687 at 774–75 (emphasis added).

Dormer argues that, since the witness's direct testimony was not damaging to him, his trial counsel should have simply passed on the opportunity to cross-examine her, which would not have allowed the above exchange to take place in open court.  The district court rejected this argument, concluding that like most trial decisions, trial counsel's decision whether to cross-examine and what questions to ask was presumptively reasonable.  *See United States v. Pena*, 920 F.2d 1509, 1520 (10th Cir. 1990) (choosing not to cross-examine a witness constitutes a strategic choice); *United States v. Snyder*, 787 F.2d 1429, 1432 (10th Cir. 1986) (finding counsel's choice of cross-examination questions is a tactical decision); *United States v. Miller*, 643 F.2d 713, 714 (10th Cir. 1981) (finding that the decision whether to call a witness is a tactical one).

We agree with the district court that counsel's cross-examination did not violate either prong of *Strickland*.

First, we are not convinced with Dormer's argument that the witness's testimony on direct examination was benign, and not worthy of challenge. While Dormer is correct that the crux of the witness's testimony focused on Dormer's co-defendant, the witness did mention Dormer in the relevant portions of her testimony focusing on the co-defendant's arrest in December 2002. As she testified:

> Q.    [Prosecutor:] Did he at any point tell you what happened with regard to the trip to Cleveland?
>
> A.     [Witness:] Yes.
>
> Q:    What did he tell you?
>
> A:    That Dean [Dormer] called the police and reported [a co-conspirator's] car stolen.
>
> Q:    Did he tell you why?
>
> A:    He didn't tell me. Nobody knew why he did that.
>
> Q:    Okay.
>
> A:    **I don't really think it makes sense to anybody.**

R. Doc. 686 at 579 (emphasis added).

While the witness did not go into detail about Dormer's involvement, she provided an opening that Dormer's trial counsel tried to exploit. In other portions

of the cross-examination not cited by Dormer, his trial counsel tries to push the witness as to Dormer's involvement:

> Q.     [Dormer's Trial Counsel:]  [In the aftermath of the co-defendant's arrest]  Did the name – the name Dean Dormer didn't ring a bell with you at that point, right?
>
> A.     [Witness:] Right.
>
> Q.     And what did – did you say to [the co-defendant], "Well, who the heck is Dean Dormer?"
>
> A.     Yeah, I did.
>
> Q.     And [the co-defendant] responded what?
>
> A.     He's the one who bought [a co-conspirator's] car for him.
>
> Q.      . . . Did they think that Mr. Dormer worked for the police?
>
> A.     It was speculated, yes.

R. Doc. 687 at 768-69.

It is obvious that Dormer's trial counsel was trying to insert some distance between the conspiracy and Dormer—a reasonable trial strategy to a conspiracy charge.  Just because the cross-examination *eventually* elicited testimony that Dormer contends was harmful, this does not rise to the level of deficient performance.  *See also Pickens v. Gibson*, 206 F.3d 988, 1002 (10th Cir. 2000) (noting that "[t]rial strategy includes determining how best to cross-examine witnesses").

As the district court's thorough order concluded, the "attorney's decision to clarify [the witness's] remark that Dormer's reporting the vehicle as stolen didn't make sense to anyone, was likely strategic. The fact that the answer hindered Dormer's case, does not warrant a finding of ineffective assistance." R. Doc. 989 at 18; *see also Strickland*, 466 U.S at 689 (finding the existence of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, [in order to prevail,] the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy") (internal quotation marks omitted).

Given that we find Dormer's trial counsel's performance was not deficient, we need not address the second *Strickland* prong of prejudice. *Romano v. Gibson*, 239 F.3d 1156, 1181 (10th Cir. 2001) ("This court can affirm the denial of habeas relief on whichever *Strickland* prong is the easier to resolve."). But even if we did, like the district court we doubt that given the other evidence in the record, the cross-examination alone determined the outcome of trial and was therefore constitutionally prejudicial to Dormer's defense.

Accordingly, we find the conclusions drawn by the district court's order were sound and not debatable for the purposes of granting a COA.

### III. Conclusion

For the foregoing reasons, we DENY Dormer's application for a COA and DISMISS his appeal.

ENTERED FOR THE COURT

Timothy M. Tymkovich
Circuit Judge