Antione NORTON, Appellant–
Defendant,

v.

STATE of Indiana, Appellee.

No. 49A05–0109–CR–390.

Court of Appeals of Indiana.

Aug. 12, 2002.

Janice L. Stevens, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Antione Norton appeals from his jury trial conviction of Murder, a felony.[1] He presents two issues for our review, one which we find to be dispositive: whether the trial court improperly admitted into evidence a redacted version of the statement of Norton's co-defendant.[2]

---

1. Ind.Code § 35–42–1–1 (Burns Code Ed. Supp.2002).

2. To aid the readers of this opinion in following our analysis, any reference to "co-defendant" refers to the individual who made a pre-trial statement which is sought to be ad-

We reverse.

Norton and his co-defendant, Sylvester Thomas, were initially charged together; however, the State moved for a severance, and Thomas was tried alone. The trial resulted in a hung jury on the charge of Murder[3] and in acquittals on the charges of Felony Murder[4] and Attempted Robbery.[5] The State then moved to try Thomas and Norton together. A joint trial was held, resulting in the conviction of Norton and an acquittal on the charge of Murder for Thomas.

The facts underlying the charges arose from an incident on July 24, 2000, which began when Thomas paged Stephan Hooks, the victim of the shooting, at 9:14 p.m. Hooks returned Thomas's call moments later. Soon after, Hooks, Thomas, and Norton proceeded to an alley close to a house where Norton formerly lived. Hooks was later found in the alley in his car, which was stopped against an electric pole. The automobile engine was still running. Hooks died from a single gunshot wound to the head.

At trial a redacted statement from Thomas,[6] which showed that Thomas had paged Hooks in order to purchase some marijuana from him, and that they had presumably gone to the alley to meet a third party to provide them with the marijuana, was admitted into evidence as State's Exhibit 60 (tape recording) and 61 (transcript) over objections from both defendants.[7] One witness testified that he saw the car drive into the alley and that he heard what sounded like a gunshot or a firecracker. Another witness, who had been parked in his car in the carport of the house behind the alley where the shooting occurred, testified that he saw Norton, holding a gun in his right hand, attempting to get out of the car through the back passenger side door. That witness also testified that he saw Norton then jump over the front seat and get out through the front passenger door and run up the alley.

■ Norton's appeal focuses upon the trial court's admission into evidence of the State's redacted version of a statement made by Thomas to a police detective on August 24, 2000, one month after Hooks was killed. At trial, Thomas objected to the use of the redacted statement asserting that it was misleading and requested that the whole statement, including a statement made just days after Hooks was killed, be admitted into evidence under the doctrine of completeness. Norton's attorney also stated that the redacted statement did not give the full version of the events as related by Thomas and that completeness would warrant that the whole statement be admitted. In response to

mitted into evidence at a joint trial. "Defendant" refers to the other individual who is tried, but who did not make the statement at issue.

3. I.C. § 35–42–1–1.

4. I.C. § 35–42–1–1.

5. Ind.Code § 35–41–5–1 (Burns Code Ed. Repl.1998); Ind.Code § 35–42–5–1 (Burns Code Ed. Repl.1998).

6. This statement was made August 24, 2000. Norton and Thomas sought at trial to have a statement, which was made by Thomas approximately one month earlier than the state-

ment entered into evidence at trial, also admitted as part of the same statement. Norton seems to have abandoned this argument upon appeal. However, we note that two separate statements which are made approximately one month apart cannot temporally be considered as one statement, and thereby, admissible into evidence under the doctrine of completeness.

7. Both defendants contended that the full statement should be admitted but as an alternative tendered their own redaction of Thomas's statement.

Thomas's request, which was based in part upon Norton's joinder in Thomas's request that the entire statement be admitted, the trial court stated:

"No. I'm not going to do that, because [Norton's] got a right to confront and cross examine the witnesses that relates to that statement and it's my duty as the gate keeper to protect evidence that comes in to this Court and that's what I'm doing, so I'm still not going to allow that in. Okay." Transcript at 444.

In denying the request to admit the whole statement, the trial court was invoking the protections provided to defendants from the admission into evidence of statements made by co-defendants which incriminate the defendant. This principle was established by the United States Supreme Court in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

In *Bruton*, the Supreme Court reconsidered its prior holding in *Delli Paoli v. United States*, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957), in which the Court had held that it was proper for a co-defendant's statement, which implicated the defendant, to be admitted at a joint trial so long as the jury was instructed that the statement was to be used as evidence only against the co-defendant who made the statement. The Supreme Court reversed its earlier decision and held that the pre-trial statement of one co-defendant, which implicated the other defendant, could not be admitted at trial. *Bruton*, 391 U.S. at 126, 88 S.Ct. 1620. In reaching its decision, the Supreme Court determined that there was a substantial risk that a jury might consider the incriminating extrajudicial statement of the co-defendant against both the co-defendant who made the statement and against the defendant as to whom the statement could not be used at trial. *Id.* The Supreme Court recognized that the right to confront and cross-examine the witnesses against oneself was secured by the Sixth Amendment, and that a limiting instruction on the use of an incriminating statement of a co-defendant was not an adequate protection of the defendant's constitutional right of cross-examination. *Id.* at 137, 88 S.Ct. 1620. Rather, the options for the State are to move to sever the trial, offer into evidence a redacted statement which omits all references to the defendant who did not make the statement, or completely avoid the use of the co-defendant's statement. Ind.Code § 35–34–1–11 (Burns Code Ed. Repl.1998).

For purposes of this appeal, the questions as to the import of the *Bruton* decision are what protection is afforded to defendants and who determines whether that protection is to be applied. In his brief, Norton asserts that as it is his right to confront and cross-examine witnesses, it is also his right to invoke or not invoke the protection of *Bruton*. Norton does not believe that it is a right which is properly invoked by either the State or the trial court.

■ As stated above, the basis for the Supreme Court's decision in *Bruton* was the defendant's constitutional right to confront and cross-examine witnesses. However, it is a well settled principle of law that a defendant may waive his right to confront and cross-examine witnesses. *See Timberlake v. State*, 690 N.E.2d 243 (Ind.1997) (failure to cross-examine a witness when given the opportunity waives that right), *cert. denied*, 525 U.S. 1073, 119 S.Ct. 808, 142 L.Ed.2d 668 (1999); *Pierce v. State*, 677 N.E.2d 39 (Ind.1997) (failure to request the opportunity to cross-examine a witness at trial called by the opposing party waives the right); *Dodson v. State*, 502 N.E.2d 1333 (Ind.1987) (absence from the court room during questioning of a witness may waive right to cross-examination); *Moore v. State*, 479 N.E.2d 1264

(Ind.1985) (entering of a valid guilty plea waives the right to confront accusers), *cert. denied,* 474 U.S. 1026, 106 S.Ct. 583, 88 L.Ed.2d 565.

■ It has also been established in Indiana that a defendant may waive his claim of a *Bruton* violation through error. In *Latta v. State,* 743 N.E.2d 1121 (Ind. 2001), the Indiana Supreme Court, in review of a denial of post-conviction relief, determined that Latta's right to cross-examine her co-defendant was violated by the admission of the co-defendant's statement without Latta having the opportunity to cross-examine him. *Id.* at 1126. However, while her claim had merit, the *Bruton* violation was deemed waived because it was not argued upon direct appeal. *Latta,* 743 N.E.2d at 1126.

Neither Norton nor the State has directed this court to any cases which specifically address the question presented by Norton as to whether he may voluntarily waive his *Bruton* protection and thereby cause an entire statement of a co-defendant to be entered into evidence. In our review of cases from other jurisdictions, we have not found any cases directly on point, but we have found several opinions which are instructive.

In *State v. Golphin,* 352 N.C. 364, 533 S.E.2d 168, 196 (2000), *cert. denied,* 532 U.S. 931, 121 S.Ct. 1379, 1380, 149 L.Ed.2d 305 (2001), the North Carolina Supreme Court held that a *Bruton* claim was waived when the defendant signed a document waiving any objection he may have had under *Bruton* and also failed to object to the admission of the co-defendant's statement at trial. In *State v. Buonadonna,* 122 N.J. 22, 583 A.2d 747 (1991), the New Jersey Supreme Court addressed the level of scrutiny required in order to find that *Bruton* rights had been waived at trial. In so doing, the New Jersey Supreme Court relied upon *People v. Shell,* 152 A.D.2d

609, 543 N.Y.S.2d 510 (N.Y.App.Div.1989), *appeal denied,* in which the *Shell* court held that trial counsel was not ineffective for declining the trial court's offer to hold a *Bruton* hearing upon a co-defendant's statement.

Norton's argument, in light of our Supreme Court's holding in *Latta* and the decisions of our sister jurisdictions, is persuasive. The significance to the *Bruton* decision is that a defendant must be given the opportunity to cross-examine the witnesses against him. However, the law is clear that the right to cross-examine witnesses may be waived, both voluntarily and through error. *See, e.g., Timberlake,* 690 N.E.2d at 255. It therefore is only logical that a *Bruton* claim may also be voluntarily waived by the defendant against whom an incriminating statement of a co-defendant may potentially be used. However, while we hold that a defendant may voluntarily waive the protections provided by *Bruton,* we also recognize the difficulty in determining what constitutes a valid waiver and when such waiver may be applied.

■ When a statement from a co-defendant is offered as evidence at trial, it is generally true that a redacted version of the statement, which does not implicate the defendant, may be properly admitted. *Richardson v. Marsh,* 481 U.S. 200, 208, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). However, the co-defendant who made the statement, and against whom the statement is being used, has the right to request that the whole statement be admitted under the doctrine of completeness, if the statement, as redacted, is misleading. *Evans v. State,* 643 N.E.2d 877, 881 (Ind. 1994). As the statement of the co-defendant is generally hearsay to the defendant, that defendant has the right to object to the statement. *See* Ind. Evidence Rule 801 through 804. *See also, Bruton,* 391

U.S. at 128 n. 3, 88 S.Ct. 1620. When the co-defendant who made the statement seeks admission of the entire statement, and the other defendant invokes his *Bruton* protection, the State must either seek a severance, forfeit the ability to enter any of the statement into evidence, or redact all portions of the statement which refer to the objecting defendant. I.C. § 35–34–1–11. There is the possibility though, as happened in this case, that the defendant will agree with the co-defendant who made the statement that the entire statement should be entered into evidence. In such a situation, the trial court then must look to the doctrine of completeness to determine whether it is proper to admit the whole statement.

The doctrine of completeness has been incorporated into the Indiana Evidence Rules as Evidence Rule 106. *Stanage v. State*, 674 N.E.2d 214, 216 (Ind.Ct. App.1996). However, Evidence Rule 106 does not change the common law with regard to the admissibility of the omitted portions which a party wishes to include. *Id.* The omitted portions are still subject to the normal rules of admissibility. *Evans*, 643 N.E.2d at 881. Portions found to be immaterial, irrelevant, or prejudicial must be redacted. *Id.* According to the doctrine of completeness, a party may place into evidence the remainder of a statement or document which the opposing party has introduced when the portions relied upon by the opposing party may be misleading to the jury when taken out of context. *Id.* *See also Lieberenz v. State*, 717 N.E.2d 1242, 1248 (Ind.Ct.App.1999) (stating that Evidence Rule 106 was designed to avoid the misleading of the jury when the admitted statement conveys a distorted picture by the introduction of only selective parts), *trans. denied.*

The State asserts that in this case, the redacted statement was not misleading, and therefore, the whole statement by Thomas could not be admitted into evidence. However, it is difficult to follow the logic which the State applies in arguing that the redacted statement was not misleading in light of the State's argument at trial. The Prosecutor, during closing argument, stated:

> "July 24th, last year, 2000, at 9:14 in the evening, Sylvester Thomas paged Stephan Hooks, the victim in this cause, lured him to the trap, the trap that would include his good friend, a man that he's always with, Ant[io]ne Norton.
>
> \*　　\*　　\*
>
> [B]y design of the Defendant Sylvester Thomas, [Hooks] lay dead with an execution style shot to the back of the head to an area [which] commonly can be referred to as the 'kill zone.'
>
> \*　　\*　　\*
>
> [O]nce he was compelled by these two men in his car, by the Defendant Ant[io]ne Norton in the back seat and Sylvester Thomas there right next to him in that passenger seat, once that gun, an armed man was compelled at gunpoint to drive down that alley, it was a foregone conclusion, ladies and gentlemen, that indeed likely he knew it that he would end up sitting in his own driver's seat mortally, fatally wounded by a gunshot less than three inches to the back of his head. One unarmed man, alone in that alley of death with these two defendants." Tr. at 590–92.

This picture painted by the State clearly depicts the act as premeditated, with it being an "execution style" killing. That theory was not implausible, and the jury could have ultimately found that theory to be correct. But reading the redacted statement in light of the State's theory of the case, we must agree with Norton that the redacted version of the statement was

potentially misleading, even though the jury acquitted Thomas.

The evidence showed that both Thomas and Norton were at the scene when Hooks was shot. The statement provided by Thomas placed them at that location for the purpose of completing a drug transaction. The statement also provided evidence that Thomas was unaware of any plan to shoot Hooks and that he ran in order to protect himself. However, the language which could have been viewed as exculpatory to both Thomas and Norton, and which refuted the State's theory that this was an "execution style" killing, was omitted from the portion of the statement provided to the jury. Thus, this use of the redacted statement was factually misleading.

The State further argues that the trial court properly excluded the remainder of the statement because it was inadmissible hearsay and the defendants were trying to admit favorable testimony without taking the stand. The basic premise of Evidence Rule 106 is that an individual may offer into evidence the omitted portions of a writing or recorded statement that in fairness ought to be considered contemporaneously with the portion of the statement or document admitted by the other party. See also, Evans, 643 N.E.2d at 882. The State cites Stanage, 674 N.E.2d at 214, for the proposition that evidence which is highly prejudicial to a defendant cannot be admitted under Evidence Rule 106. See also, Evans, 643 N.E.2d at 881. While that proposition is technically correct, it is not a rule which is properly utilized to keep a defendant from being able to invoke the application of Evidence Rule 106. It is our reading of the Indiana Supreme Court cases, which the State cites in support of its argument, that evidence which the State is trying to admit, through the use of Evidence Rule 106, may properly be

excluded if that information would be prejudicial to the defendant. See id. (holding that the trial court did not err in admitting a redacted statement offered by the State in rebuttal of defendant's cross-examination of a witness). Other cases which the State cites, such as Atwell v. State, 738 N.E.2d 332 (Ind.Ct.App.2000), trans. denied, cert. denied, —— U.S. ——, 122 S.Ct. 175, 151 L.Ed.2d 121 (2001), have allowed the admission of a statement under the doctrine of completeness following a balancing test in which the court determined that the probative value of admitting the statement outweighed its prejudicial effect. All other Supreme Court cases cited by the State deal with the relevancy of the omitted portions of the statement, and therefore, are not applicable in this case. See, e.g., DesJardins v. State, 759 N.E.2d 1036 (Ind.2001), reh'g denied. The sole case which supports the State's assertion that it is proper to exclude the relevant portions of a statement which the defendant seeks to have admitted under the doctrine of completeness is Stanage. To the extent that Stanage differs from our reading of Evans, we must respectfully disagree.

A statement may be constructed of parts which are both inculpatory and exculpatory. It does not serve the interests of justice for the State to be permitted to admit portions of a statement which are inculpatory against an individual, but to prevent that same individual from entering the remaining portions of the statement which are relevant while being both inculpatory and exculpatory under the guise that the judicial system is protecting that individual from prejudicial information being brought before the jury. So long as the defendant is properly relying upon Evidence Rule 106, the defendant may waive his right to have prejudicial information admitted against himself if he believes that the evidence also may have some exculpa-

tory value and is necessary to prevent the jury from being mislead through the use of a redacted statement.

■ The State also argued during pre-trial motions in limine that the portions of the statement sought to be introduced by Norton and Thomas were self-serving, and therefore, were inadmissible. However, just because statements may be self-serving, they are not automatically excluded under the doctrine of completeness. *McElroy v. State*, 553 N.E.2d 835 (Ind. 1990). The State also cites *Brown v. State*, 525 N.E.2d 294 (Ind.1988), for the proposition that omitted portions of statements, which constitute hearsay, cannot be introduced into evidence at the request of a defendant when the defendant will be immune from cross-examination. This case is distinguishable from *Brown* upon the grounds that in *Brown*, the defendant sought to admit the transcript of a pre-trial interview with a police detective while the detective was on the stand and had answered questions about the pre-trial interview. *Id.* at 295–96. At no time in *Brown* did the State seek to admit the pre-trial statement. Our Supreme Court noted that the privilege against self-incrimination was to be used as a shield, and not a sword, and therefore, the defendant could not elicit beneficial evidence on his own when he was immune from cross-examination by his own trial strategy. *Id.* at 296. In this case, the State was allowed to admit portions of the statement into evidence first, then Norton and Thomas sought to admit the omitted portions. Contrary to the assertion that Norton and Thomas wished to use the statement as a sword, they were using it as a shield to deflect the inculpatory nature of the blow that was struck by the State's use of the redacted statement. Under the facts of this case, the trial court should have admitted the entire statement of Thomas as

the whole statement was necessary to put the information sought to be included into evidence by the State into context.

However, this also directs us to a further complication which may arise in the waiver of *Bruton* protections. It occurs when a defendant seeks to have only part of the omitted portions of a statement admitted. In such a situation, a defendant may then be viewed as attempting to use his privilege against self-incrimination as a sword instead of a shield, which would be improper under the theory supporting the Supreme Court's decision in *Brown*. We note that such attempted use of a statement may also be impermissible as a deliberate act of deception upon the court. *See Fox v. Ward*, 200 F.3d 1286 (10th Cir.2000) (stating that admission of some omitted portions of a statement is impermissible if it unfairly distorts the original complete statement), *cert denied*, 531 U.S. 938, 121 S.Ct. 329, 148 L.Ed.2d 264 (2000).

We are also compelled to note that no defendant may use a waiver of his *Bruton* rights to coerce the admission of a statement made by a co-defendant when the co-defendant does not request that the entire statement be entered unless there is a hearsay exception which will allow the defendant to enter the statement. *See* Evid. R. 803–804. In the same vein, as discussed regarding *Evans*, even if a statement of a co-defendant is admissible under a hearsay exception, the co-defendant who made the statement may still be able to prevent its use if the statement is found to be prejudicial to the co-defendant.

■ Finally, we must address what may constitute a valid waiver of *Bruton* rights. While we do not create a bright-line rule of what is a knowing and voluntary waiver in every case, we hold that Norton's *Bruton* rights were knowingly and voluntarily waived in this case. At trial, Thomas's counsel requested that the entire state-

ment be admitted under the doctrine of completeness and made an offer of proof of the entire statement. Norton's attorney joined in this request on behalf of his client.[8] From a reading of the transcript of the pre-trial hearing and the trial itself, it is clear that Norton understood that Thomas would not testify and that he could not cross-examine him. It is also clear that Norton understood that the entire statement would implicate him as the shooter in the crime and also that he had the right to prevent the jury from hearing the portions of the statement which were prejudicial to him. Nonetheless, Norton chose to have the entire statement admitted. Under these facts, Norton waived his *Bruton* protections, and because the entire statement was admissible under the doctrine of completeness at the request of Norton's co-defendant, the trial court erred in allowing only a redacted portion of the statement into evidence.

■■■■ Unless an error in the admission or exclusion of evidence affects a substantial right of a party, the error will be disregarded as harmless. *Stewart v. State*, 754 N.E.2d 492, 496 (Ind.2001). An error is harmless if its probable impact upon the jury, in light of all of the evidence in the case, is sufficiently minor so as to not affect the substantial rights of the parties. *Id.*

■■■ In this case, there was evidence before the jury based upon eyewitness testimony that Norton was in the car while it was in the alley, and that he tried to get

out of the car while holding a gun. There was also evidence that the police found the weapon used in the shooting of Hooks in a bedroom in which Norton slept. However, while this is evidence of Norton's involvement in the crime, as discussed above, the redacted statement entered by the State into evidence was factually misleading, and painted a picture of the crime which was much different than that painted by the entire statement. While the jury apparently did not believe the State's version of events relating to Thomas, it is not clear whether the jury believed the State's theory regarding Norton. In light of the potential impact that the use of the redacted statement may have had upon the jury, we cannot hold that the exclusion of the entire statement was harmless error. However, as there was evidence before the jury that Norton was seen at the scene of the crime while carrying a handgun, double jeopardy does not bar retrial. *Robinette v. State*, 741 N.E.2d 1162, 1168 (Ind.2001) (holding double jeopardy does not bar retrial when there is sufficient evidence to support a conviction).

We reverse the conviction and remand for a new trial.

BAKER and DARDEN, JJ., concur.

---

8. During the pre-trial motions in limine, Norton's counsel stated that he did not want any of the statement to be admitted into evidence, but that if it was to be introduced, that the statement should not only reflect what the State wanted offered into evidence, but also what was meant by Thomas. Norton's counsel made no remarks at trial that his client wanted to keep the entire statement out. Rather, from the context of the colloquy between counsel and the trial court judge, it is clear that Norton made the decision to have the entire statement admitted even though he could not cross-examine his co-defendant and that the entire statement would place him inside the vehicle and also indicate that he was the individual who fired the gun.