Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**SUZY ST. JOHN**
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana
Indianapolis, Indiana

**MICHELLE BUMGARNER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TODD SLAVIN, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1111-CR-569 |
| | ) | |
| STATE OF INDIANA | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Barbara Cook Crawford, Judge
Cause No. 49G21-1105-CM-28704

**August 9, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Todd Slavin ("Slavin") was convicted in Marion Superior Court of Class A misdemeanor invasion of privacy. Slavin appeals and argues: (1) that the trial court abused its discretion in admitting certain evidence, and (2) that the evidence was insufficient to support his conviction.

We affirm.

**Facts and Procedural History**

Slavin, a Carmel, Indiana resident, and M.M. have known each other for ten years and were romantically involved for two of those years. On October 4, 2010, Slavin left Indiana for an extended stay in New York City and he remained in the New York City area for several months. On the same day as his departure, M.M. obtained an *ex parte* order for protection against Slavin, which prohibited Slavin from "harassing, annoying, telephoning, contacting or directly or indirectly communicating with [M.M.]." Ex. Vol. p. 261, State's Ex. 2.

The order of protection was served at Slavin's Carmel address while he was out of state. The Indiana Protective Order Registry indicated service of the protective order on October 27, 2010 by the Hamilton County Sheriff's Department. Additionally, M.M. testified that she informed Slavin of the protective order either by speaking with Slavin on the phone or by texting him. Evidence admitted into the record indicates that Slavin contacted M.M. many times between October 4, 2010 and January 11, 2011. It is undisputed that M.M. contacted Slavin many times as well, beginning in December of 2010.

2

The volume of text messages sent between Slavin and M.M. drastically increased over the winter holidays in December 2010 and January 2011, and included many text messages from M.M. to Slavin. On January 14, 2011, M.M. met with Detective Rizwan Khan ("Detective Khan") and showed him the text messages Slavin had sent her. At this meeting, Detective Khan used M.M.'s phone to take screenshots[1] of the text messages that Slavin sent to M.M..

On January 14, 2011, Detective Khan contacted Slavin. When the two met that day, Detective Khan told Slavin about the protective order and gave a copy of the order to him. Slavin was not arrested at that time. In April of 2011, Detective Khan called Slavin and told him that he would be arrested.

On May 23, 2011, the State charged Slavin with Class A misdemeanor invasion of privacy for "telephoning and/or texting [M.M.] multiple times" between January 4 and 11, 2011. Appellant's App. p. 15. On October 6, 2011, Slavin was convicted following a bench trial. Slavin now appeals.

## I. Admissibility of Evidence

Slavin appeals the admission of two pieces of evidence at trial. First, Slavin argues that State's Exhibit 3, a printout of the Indiana Protective Order Registry service history indicating that the protective order was served at Slavin's Carmel address on October 27, 2010, contained inadmissible hearsay and violated his Sixth Amendment confrontation rights. Second, Slavin asserts that State's Exhibit 4, which consists of

---

[1] Screenshots are images that show the content of a computer or smartphone display.

screenshots taken from M.M.'s iPhone of the text messages Slavin sent to M.M., is misleading and incomplete and therefore inadmissible.

As an initial matter, we note that the State did not address Slavin's arguments concerning the admissibility of State's Exhibits 3 and 4 in its brief. An appellee's failure to respond to an issue raised in the appellant's brief is analogous to failing to file a brief on that issue. Cox v. State, 780 N.E.2d 1150, 1162 (Ind. Ct. App. 2002). For an appellant to win reversal on an issue to which the appellee did not respond, he or she must establish that prima facie error was committed by the lower court. Id. Prima facie is defined as at first sight, on first appearance, or on the face of it. Id. However, the purpose of this rule is not to benefit the appellant, but rather "to relieve this Court of the burden of developing arguments on behalf of the appellee." State v. Moriarty, 832 N.E.2d 555, 558 (Ind. Ct. App. 2005). The burden of showing trial court error remains with the appellant. State v. Combs, 921 N.E.2d 846, 850 (Ind. Ct. App. 2010). We are obligated to apply the appropriate law to the facts. Mateyko v. State, 901 N.E.2d 554, 557 (Ind. Ct. App. 2010), trans denied.

The admission of evidence is within the discretion of the court, and the "decision whether to admit evidence will not be reversed absent a showing of manifest abuse of the trial court's discretion resulting in the denial of a fair trial." Dixon v. State, 869 N.E.2d 516, 519 (Ind. Ct. App. 2007) (citing Cox v. State, 774 N.E.2d 1025, 1026 (Ind. Ct. App. 2002)). An abuse of discretion is a decision that is clearly against the logic and effect of the facts and circumstances before the court. Id. In determining the admissibility of

4

evidence, the reviewing court considers only the evidence in favor of the trial court's ruling and any uncontested evidence in the defendant's favor. Id.

A. *State's Exhibit 3*

Slavin argues that the information contained within State's Exhibit 3 is hearsay and therefore inadmissible. Specifically, Slavin states that the exhibit "contains an officer's out-of-court statements that the protective order was served in order to prove that the protective order was served." Appellant's Br. at 8.

"Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). "Hearsay is not admissible unless it falls within one of the exceptions provided in the evidence rules." Ind. Evidence Rule 802. We will affirm the trial court's hearsay ruling on any legal basis apparent in the record. Robinson v. State, 730 N.E.2d 185, 194 (Ind. Ct. App. 2000).

State's Exhibit 3 constitutes hearsay because it includes an out-of-court statement that the protective order was served at Slavin's Carmel address, and the exhibit was offered for the purpose of establishing that Slavin had, in fact, been served with the protective order. However, a pertinent exception to the hearsay rule, one regarding "public records and reports" is contained within Indiana Evidence Rule 803(8):

> [u]nless the sources of information or other circumstances indicate lack of trustworthiness, records, reports, statements, or data compilations in any form, of a public office or agency, setting forth its regularly conducted and regularly recorded activities, or matters observed pursuant to duty imposed by law and as to which there was a duty to report, or factual findings resulting from an investigation made pursuant to authority granted by law.

5

The following types of records are explicitly excluded from the rule:

> (a) investigative reports by police and other law enforcement personnel, except when offered by an accused in a criminal case; (b) investigative reports prepared by or for a government, a public office, or an agency when offered by it in a case in which it is a party; (c) factual findings offered by the government in criminal cases; and (d) factual findings resulting from special investigation of a particular complaint, case, or incident, except when offered by an accused in a criminal case.

Ind. Evidence Rule 803(8).

The public records exception to the hearsay rule is grounded in the "assumption that public officials perform their duties properly without motive or interest other than to submit accurate and fair reports." Fowler v. State, 929 N.E.2d 875, 878 (Ind. Ct. App. 2010) (quoting 13 Robert Lowell Miller, Jr., Indiana Practice: Indiana Evidence § 803.108 (3d ed. 2007)). A document does not need to be open and available to the public in order to qualify for admission under the public records exception. Id. (citing 2 Kenneth S. Broun, McCormick On Evidence § 295 (6th ed. 2006)). Fundamentally, the rule requires that a public agency or office created the document. Id. (citing Ind. Evidence Rule 803(8)). " . . . [I]nvestigative reports by police or other law enforcement personnel . . ." are not excepted under Ind. Evidence Rule 803(8). Id.

However, "routine, ministerial, objective nonevaluative matters made in non-adversarial settings" are not barred from admission into evidence. Id. (quoting 30B Michael H. Graham, Federal Practice & Procedure § 7049 (2d ed. 2006)). "Due to the lack of any motivation on the part of the recording official to do other than mechanically register an unambiguous factual matter . . . such records are, like other public documents, inherently reliable." Id. (quoting United States v. Quezada, 754 F.2d 1190, 1194 (5th

Cir. 1985) (holding that a warrant of deportation, which contained the appellant's thumbprint and the date and location of his deportation was admissible into evidence and provided sufficient notice to the appellant that he had been served with deportation documentation)).

In Fowler, the State introduced a "certified Indianapolis Metropolitan Police Department 'Booking Information' printout" to establish the identity of the victim. Fowler, 929 N.E.2d at 877. The document contained the victim's photograph, name, date of birth, and a description of the individual. Id. The defense argued that the document was inadmissible hearsay and that it violated the accused's confrontation rights. Id. The trial court admitted the evidence over that objection. Id.

In affirming the trial court, we noted in Fowler that "[t]he rote recitation of biographical information in a booking sheet ordinarily does not implicate the same potential perception biases that a subjective narrative of an investigation or an alleged offense might." Id. at 879 (quoting United States v. Dowdell, 595 F.3d 50, 70–72 (1st Cir. 2010)). The booking card, created by law enforcement, was completed with biographical information obtained through "the course of a ministerial, nonevaluative booking process." Id.

We believe that the service history document at issue here is analogous to the certified booking printout in Fowler. Both are representations of work routinely completed by law enforcement agencies. Both are form documents into which information is inserted. The service history document has columns that include information relating to the "Case Number, Date/Time, Person, Location, Method, Served

By, ID/Badge #, LEA (Law Enforcement Agency)" specific to this protective order. Ex. Vol. p. 264, State's Ex. 3.

Accordingly, we hold that State's Exhibit 3 satisfies the first part of Evidence Rule 803(8). And because State's Exhibit 3 is not an investigative report and does not contain any factual findings, it is not excluded by the second part of the rule. See Ealy v. State, 685 N.E.2d 1047 (Ind. 1997) ("[A] 'finding' or a 'finding of fact' refers to the result or conclusion drawn by an investigator, whether it be a fire inspector, judge, or jury, 'from facts without exercise of legal judgment.'"); Rhone v. State, 825 N.E.2d 1277, (Ind. Ct. App. 2005) ("Factual findings are conclusions drawn by an investigator from the facts."). Because State's Exhibit 3 falls within the public records exception set forth in Evidence Rule 803(8), we conclude that the trial court did not abuse its discretion overruling Slavin's hearsay objection. Even under the prima facie error standard applicable to this issue, Slavin still bears the burden of establishing not only that the exhibit was hearsay, but also that it was inadmissible.

Slavin also argues on appeal that the admission of State's Exhibit 3 violated his Sixth Amendment confrontation rights because the Hamilton County Sheriff's deputy who served the protective order was not available for cross-examination. "A party waives an issue on appeal by making no mention at trial of the grounds asserted on appeal." Cadiz v. State, 683 N.E.2d 597, 598 (Ind. Ct. App. 1997). "When a defendant fails to object to the introduction of evidence, makes only a general objection, or objects only on *other* grounds, the defendant waives the suppression claim." Robinson v. State, 730 N.E.2d 185, 192-93 (Ind. Ct. App. 2000) (quoting Moore v. State, 696 N.E.2d 733,

8

743 (Ind. 1996)). "To preserve a suppression claim, a defendant must make a contemporaneous objection that is sufficiently specific to alert the trial judge fully of the legal issue." Id. (quoting Moore, 696 N.E.2d at 743).

Slavin objected to the admission of State's Exhibit 3 only on hearsay and foundational grounds. At no point in his objection did Slavin reference Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2005), the Confrontation Clause, any derivative of the word "confront," or the Sixth Amendment. The objection at trial fails to make a confrontational objection with requisite specificity.

Moreover, Slavin's argument that his "hearsay and foundational objections are sufficient to preserve the Confrontational Clause issues" lacks merit. Appellant's Br. at 9. See Boatner v. State, 934 N.E.2d 184, 187 (Ind. Ct. App. 2010) (holding that a defendant's hearsay objection was insufficient to preserve a confrontation claim). Slavin cannot claim a confrontation clause violation on appeal when he objected to the admission of State's Exhibit 3 only on hearsay and cursory foundational grounds at trial.[2] For all of these reasons, Slavin has waived appellate review of this argument.

B. *State's Exhibit 4*

The State introduced, and the trial court admitted, copies of screenshots from M.M.'s iPhone that show content from text messages sent to M.M. by Slavin between January 4 and January 11, 2011. Slavin asserts that the phone was in "edit mode" when

---

[2] Slavin cites Koenig v. State, 916 N.E.2d 200 (Ind. Ct. App. 2009), trans. granted, opinion vacated, 993 N.E.2d 1271 (Ind. 2010), for the proposition that his hearsay and foundational objections were sufficient to preserve the Confrontation Clause argument he now raises. However, our supreme court granted transfer in Koenig and did not summarily affirm any portion of this court's opinion in that case. Accordingly, this court's opinion in Koenig has been vacated pursuant to Indiana Rule of Appellate Procedure 58.

9

the screenshots were taken and that there is a discrepancy between what the screenshots depict and what the phone records indicate in that "multiple text messages were deleted or otherwise omitted[.]" Appellant's Br. at 12.

"Determination of whether photographic evidence is admissible is discretionary. That determination will not be disturbed unless the court abuses its discretion." Brim v. State, 471 N.E.2d 672, 675 (Ind. 1984). An adequate foundation must be laid for the admission of photographs, which requires testimony that the pictures are a "true and accurate representation of the things they are intended to portray." Id. (citing Stewart v. State, 442 N.E.2d 1026 (Ind. 1982) and Brumfield v. State, 442 N.E.2d 973 (Ind. 1982)).

M.M. testified that the screenshots were a true and accurate representation of the photographs of the text messages taken:

Q: Miss M.M., I'm showing you what's been marked State's Exhibit 4 for identification. Do you recognize this?

A: Yes, I do.

Q: And what is this?

A: These are messages - text messages from Todd Slavin to me.

Q: And, um, do you know when they - these photographs were taken?

A: They were taken the day that I visit[ed] Detective Khan in his office.

Q: And is this a fair and accurate representation of what he photographed[?]

A: Yes, it . . .

Q: . . . that day . . .

A: . . . is . . .

10

Q: . . . and what was on your phone? Okay.

A: Yes.

Tr. pp. 25-26. Slavin's chief argument is that the screenshots cannot be a fair and accurate representation "of the conversation" because twenty-seven text messages sent from M.M. to Slavin were deleted from the iPhone between "1:45 a.m. and 5:54 p.m. on January 4, 2011" and are not included in the exhibit. Appellant's Br. at 13.

The trial court admitted State's Exhibit 4 into evidence for two reasons: 1) M.M. testified that the text messages came from her telephone and that she was present when they were taken by Detective Khan and 2) the ultimate issue for the trial court was whether Slavin was aware of a protective order and chose to ignore it, not whether there "were [text messages] that were missing . . . the court does not find that dispositive." Tr. p. 29. M.M. did not testify that the screenshots were a fair and accurate representation of the entire conversation, but rather a representation of what she showed to Detective Khan.

Slavin also asserts that State's Exhibit 4 was inadmissible under the doctrine of completeness. "The common law doctrine of completeness provides that '[w]hen one party introduces part of a conversation or document, the opposing party is generally entitled to have the entire conversation or entire instrument placed into evidence.'" Lewis v. State, 754 N.E.2d 603, 606 (Ind. Ct. App. 2001) (quoting McElroy v. State, 553 N.E.2d 835, 839 (Ind. 1990)). The doctrine of completeness has been incorporated into the Indiana Evidence Rules as Evidence Rule 106. Norton v. State, 772 N.E.2d 1028, 1033 (Ind. Ct. App. 2002). The rule states:

When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require at that time the introduction of any other part or any other writing or recorded statement which in fairness ought to be considered contemporaneously with it.

Ind. Evidence Rule 106.

The purpose of Evidence Rule 106 is to avoid misleading impressions from out-of-context statements or from the introduction of only selective parts of evidence. Lieberenz v. State, 717 N.E.2d 1242, 1248 (Ind. Ct. App. 1999), trans. denied (citing 13B R. Miller, Jr., Indiana Practice § 106 at 23 (Supp. 1998)). The doctrine of completeness provides "context for otherwise isolated comments when fairness requires it." Barnett v. State, 916 N.E.2d 280, 286 (Ind. Ct. App. 2009) (quoting Sanders v. State, 840 N.E.2d 319, 323 (Ind. 2006)), trans denied. Portions of evidence not expository of nor relevant to already-introduced sections of evidence need not be admitted. Id.

We need not remark on whether the text messages were a "writing or recorded statement" intended to be included in the evidence rule because the purpose of the doctrine of completeness is to allow the *introduction* of additional material to place incomplete, misleading evidence in its full context. Nothing in the record indicates that Slavin sought to submit evidence of the allegedly deleted text messages. Slavin's objection was not to have the remainder introduced into evidence, but rather an attempt to wholly exclude State's Exhibit 4. Slavin has not directed our attention to any authority supporting the proposition that Evidence Rule 106 can be used to exclude otherwise relevant and admissible evidence. And although Slavin claims that, without the omitted text messages, a misleading impression was created, Slavin did not support this assertion

12

at trial or on appeal by explaining the substance of the deleted text messages. He has therefore not met his burden of establishing that the trial court abused its discretion in admitting State's Exhibit 4.

## II. Sufficiency of Evidence

Next, Slavin argues that evidence was insufficient to support his conviction. "Upon a challenge to the sufficiency of evidence to support a conviction, a reviewing court does not reweigh evidence or judge the credibility of the witnesses, and respects 'the jury's exclusive province to weigh conflicting evidence.'" McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005) (citing Alkhalidi v. State, 753 N.E.2d 625, 627 (Ind. 2001)). We must consider only the probative evidence and reasonable inferences supporting the verdict. Id. We must affirm "if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt." Id. (quoting Tobar v. State, 740 N.E.2d 109, 111-12 (Ind. 2000)).

To convict Slavin of invasion of privacy as a class A misdemeanor, the State was required to prove that Slavin knowingly violated a protective order to prevent domestic or family violence issued under Indiana Code chapter 34-26-5. "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b). Further, "if a kind of culpability is required for commission of an offense, it is required with respect to every material element of the prohibited conduct." Ind. Code § 35-41-2-2(d). Therefore, to prove that Slavin knowingly violated the protective order, the State must prove that Slavin knew the

13

order existed. Slavin argues that the evidence produced by the State is insufficient to establish that he had such knowledge.

The trial court found that Slavin knew the protective order was in place for three reasons: 1) the State presented evidence that Slavin had notice of the order via copy service at his Carmel address, 2) M.M. testified that she notified Slavin of the protective order via a phone call or text message, and 3) Detective Khan took photographs of text messages sent by Slavin to M.M. that indicated Slavin's awareness of a protective order. Tr. pp. 67-68.

Slavin argues that he lacked notice because he was not properly served with the order and because, according to him, he did not receive a copy of the protective order around the time that it was served. However, regardless of the deficiency in service under Indiana Trial Procedure Rule 4.1(B),[3] a reasonable trier of fact could come to the conclusion that Slavin knew that the protective order was in place.

The facts found by the trial court support this conclusion. First, the evidence presented at trial established that a copy of the protective order was left at Slavin's Carmel address. Second, M.M. testified that she either texted or called Slavin in October of 2010 to inform him of the protective order. Specifically, M.M. testified that she stated "[Y]ou're in violation of the protective order and you may not contact me." Tr. p. 15. In response, Slavin "laughed at [M.M.] and he told [her] he could call [her] or any of [her] family members or [her] place of work anytime he wanted and that [M.M.] needed to

---

[3] Indiana Trial Procedure Rule 4.1(B) requires that when a copy of a protective order is left at a residence, an additional copy will be mailed to the individual being served at his or her last known address. A copy of the protective order was apparently not mailed to Slavin.

14

grow up and learn the law."[4]  Tr. p. 18; see Tharp v. State, 942 N.E.2d 814, 818 (Ind.

2011) (noting that "notice can be sufficient under the Civil Protection Order Act even

when it comes from someone other than an agent of the State if it includes adequate

indication of the order's terms"); Dixon v. State, 869 N.E.2d 516, 519-20 (Ind. Ct. App.

2007) (holding that oral notice of a protective order may be sufficient).

Further, in a text message sent from Slavin to M.M. on January 6, 2011, Slavin

specifically references a protective order:

> They told me that by u contacting me durring the order & with the tract
> record with drugs that the judge would act accordingly . . . I talked with the
> police in the protective order dept.  If i turn you in u have no idea of how
> much trouble your going 2 go through.

Vol. p. 276, State's Ex. 4.  This evidence is sufficient in the aggregate to support a

reasonable inference that Slavin had knowledge of the order at all relevant times.[5]

Slavin essentially argues that because M.M. repeatedly contacted him, he should

not be found guilty of invasion of privacy for contacting M.M..  However, "[w]hen

---

[4] Slavin urges us to apply Tharp v. State, 942 N.E.2d 814 (Ind. 2011) to conclude that M.M.'s oral notice of the protective order cannot support a conclusion that he had knowledge of the protective order.  However, in Tharp, oral notice from the protected party was deemed insufficient to show that the defendant had notice of a protective order where the protected party informed the defendant of the protective order, but later told the defendant that the order was no longer in effect.  Tharp, 942 N.E.2d at 816.  Our supreme court reasoned that "the only evidence that Tharp knew of the protective order was from Pitzer telling him about it—at the same time she told him it was no longer valid."  Id. at 817.
    Slavin argues that under Tharp, M.M.'s conduct in repeatedly contacting Slavin "counteracted her oral notice" and that such "[m]ixed messages cannot support a conviction."  Appellant's Br. at 12.  But here, unlike in Tharp, M.M. never told Slavin that a protective order was not in place.  On the contrary, M.M. testified that the communication originating from her phone to Slavin was for the sole purpose of telling Slavin to leave her alone and that she never told Slavin that the protective order had been lifted.  Tharp is therefore inapposite.

[5] Slavin argues that this text message does not necessarily support the conclusion that he had knowledge of the protective order at issue here because he could have been talking about some other, hypothetical protective order.  We believe it was reasonable for the fact finder to infer that the text message was referencing the protective order at issue here, and Slavin's arguments to the contrary amount to request to reweigh the evidence and draw inferences contrary to those drawn by the fact finder.  See Thompson v. State, 804 N.E.2d 1146, 1150 (Ind. 2004) (holding that reaching alternative inferences is a function of the trier of fact, and we therefore cannot reverse a conviction merely because a different inference might plausibly be drawn from the evidence).

determining whether a party committed the act of invasion of privacy identified in Indiana Code § 35-46-1-15.1, we do not consider whether the victim knowingly ignored the protective order but, rather, whether the defendant knowingly violated the protective order." Dixon v. State, 869 N.E.2d 516, 520 (Ind. Ct. App. 2007). Thus, the fact that M.M. sent text messages to Slavin does not negate Slavin's violation of the protective order that prohibited him from contacting her.

**Conclusion**

The trial court did not abuse its discretion by admitting State's Exhibits 3 and 4 into evidence over Slavin's objections, and the State presented sufficient evidence to support Slavin's conviction.

Affirmed.

ROBB, C.J., concurs.

BAILEY, J., concurs in result with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

TODD SLAVIN,           )
                           )
    Appellant-Defendant,    )
                           )
       vs.            )     No. 49A04-1111-CR-569
                           )
STATE OF INDIANA,     )
                           )
    Appellee-Plaintiff.     )

**BAILEY, Judge, concurring in result**

I concur in the decision to affirm Slavin's conviction for Invasion of Privacy. However, I write separately to clarify that, in my opinion, the evidence is sufficient as to Slavin's knowledge of the protective order only because of his own admission in a text message.

To convict Slavin as charged, the State was required to show that he <u>knowingly</u> violated a protective order by contacts made between January 4 and January 14, 2011. Ind. Code § 35-46-1-15.1(1), App. 15. Slavin was out of state when the protective order was obtained and he did not receive a copy until he met with Detective Khan on January 14, 2011. I would not impute knowledge to Slavin, sufficient to support a criminal

17

conviction, based upon M.M.'s informal "notification" to Slavin in October of 2010, several months before the charged conduct. It is only because of Slavin's text message of January 6, 2011, indicating that he had "talked with police in the protective order dept." and referencing "the order," that I vote to affirm the conviction. (Ex. Vol., St. Ex. 4, pg. 276.)