PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

KENNITH MEADOWS,

      Petitioner - Appellant,

v.

RANDY LIND, Warden,

      Respondent - Appellee.

No. 19-1320

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 1:16-CV-02604-RBJ)**

---

Meredith Esser, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, with her on the briefs), Office of the Federal Public Defender, Denver, Colorado, for Appellant.

Ryan A. Crane, Senior Assistant Attorney General, Criminal Appeals Section (Philip J. Weiser, Attorney General, with him on the brief), Office of the Attorney General for the State of Colorado, Denver, Colorado, for Appellee.

---

Before **TYMKOVICH**, Chief Judge, **EBEL**, and **BACHARACH**, Circuit Judges.

---

**TYMKOVICH**, Chief Judge.

---

     At the beginning of Kenneth Meadows's trial on sex offenses held in a

small, rural Colorado district court, the trial judge excused several hard-of-

hearing potential jurors because amplification equipment was not available. Meadows's trial lawyer objected to the excusals, but chose not to seek a continuance of jury selection to obtain equipment from a different location. Meadows was convicted.

On direct appeal in state court, Meadows raised the juror dismissal issue but that argument was rejected by the Colorado Court of Appeals. *See* Aplt. App., Vol. I at 143–47. The Colorado Supreme Court denied certiorari review, and Meadows was unsuccessful in state post-conviction collateral proceedings. Meadows then challenged his conviction by filing a petition for federal habeas corpus relief under 28 U.S.C. § 2254. In his petition, Meadows argued his attorney's performance at the state trial amounted to constitutionally ineffective assistance of counsel. Meadows claimed his counsel had been ineffective by failing to adequately object to the excusal of, or seek accommodations for, hard-of-hearing jurors. The district court denied Meadows's petition.

We agree with the district court that Meadows is not entitled to habeas corpus relief on his ineffective-assistance-of-counsel claim. We conclude that (1) Meadows's trial counsel was not constitutionally ineffective, and (2) Meadows failed to show any actual prejudice resulting from his trial counsel's performance because he provided no reason to believe the excusal of the jurors resulted in a fundamentally unfair trial.

# I. Background

## A. State Court Proceedings

In 2008, Meadows was charged with three state sex offenses related to conduct involving his daughter. He exercised his right to a jury trial, which was held in Jackson County, Colorado. A public defender with five years of experience represented Meadows at trial.

During voir dire, it became apparent that several jurors were having difficulty hearing the questions. After some inquiry, the judge decided to dismiss a juror who was hard of hearing and suffering from sleep apnea, citing concerns that the juror might fall asleep in court. The judge subsequently dismissed another hard-of-hearing juror specifically because of the juror's difficulty hearing the proceedings. When the judge asked if there were any objections, Meadows's attorney spoke up.

> [Counsel]: Judge, do we not have some sort of amplification devices that we could assist with—
>
> Clerk: Not here.
>
> The Court: Remember where you are . . . we do not have that here. I'm sure they do down in Fort Collins, but we don't have it available, and I'm not sure I can get it here in a reasonable time. We do have some assistance that's available in other parts of the district, probably, but not right here.

Trial Tr., Vol. I at 75–76.  When the court dismissed yet another hard-of-hearing

juror, Meadows's attorney formally objected.

> [Counsel]: Well, Judge, I would object.  I understand we don't have the equipment here, but this is not the first.  I think there's another gentleman who indicated he had a similar concern as well.  And I think we have the obligation to provide these folks the necessary equipment so that they can serve as jurors if needed. So—
>
> The Court: I understand, Counsel, but I'm not sure we can get that here within a reasonable time.  I could recess, I suppose, and try to get it here tomorrow.

*Id.* at 79–80.

After the judge dismissed a third juror due to hearing difficulties, he noted

a standing objection from Meadows's attorney but continued to voice skepticism

about a technological solution:

> The Court: All right.  Unless there's an objection—And I—your objection would stand with regards to the equipment.  I'm not sure the equipment would help us in these events.  So the Court's going to go ahead and excuse the juror over the objections of the defense.

*Id.* at 82–83.

After dismissing another hard-of-hearing juror, the judge again noted the

attorney's standing objection and said "I understand, but I'm not sure the

equipment even would assist." *Id.* at 114–15.  The prosecutor then offered to

have one of her witnesses pick up assistive equipment prior to coming up for the

trial.  The judge was amenable to this, but continued to indicate he did not think such equipment could help.

> The Court: Yeah, that would be fine, especially for tomorrow, but . . . [m]y experience with that has not been that it's all that great.  So I'm not convinced it will be of any assistance.  So I'm going to excuse the juror and note my view; there is an obligation to assist, but at what point do you say, okay.  I've been speaking as loud as I can and he's within about 4 feet of me and says he can't hear, and I don't think there's any equipment that going to fix that.

*Id.* at 115.

When yet another juror explained he suffered from tinnitus—a persistent ringing in the ears—the judge said "[l]et's hang on to you and see if we can get that equipment, see if that will help your situation." *Id.* at 116.

The next day, a juror indicated some difficulty hearing the proceedings. The judge asked if anybody had obtained assistive devices.  The prosecution responded "[u]nfortunately, my witnesses are coming up late this afternoon, so it wouldn't have happened. So I apologize."  Trial Tr., Vol. II, at 42.  All told, the judge dismissed four jurors specifically because of their difficulty hearing.

After the petit jury was finally selected, the parties proceeded to trial. Meadows was convicted on all three of the sex offenses with which he was charged, supported in part by a written confession he had signed.  He was given an indeterminate sentence, ranging between four years and life.  Meadows

brought a direct appeal in state court in 2012, arguing in part that the trial court had erred by failing to accommodate the hard-of-hearing jurors. The Colorado Court of Appeals rejected these arguments, affirming the conviction. Likewise, the Colorado Supreme Court denied Meadows's petition for writ of certiorari in 2013.

Meadows then filed for post-conviction relief under Colorado Criminal Procedure Rule 35(a). Under Rule 35(a), state prisoners can obtain collateral review of the length of their sentences. While his Rule 35(a) motion was pending, Meadows also sought relief under Rule 35(c), which allows for collateral review of a state prisoner's underlying conviction.[1] The state court refused to consider his Rule 35(c) motion while his Rule 35(a) motion was still pending. When the state court eventually denied his Rule 35(a) motion, neither Meadows nor the court took any action to revive his Rule 35(c) motion.[2]

---

[1] Meadows filed his Rule 35(c) motion pro se. In this motion, he raised a number of ineffective-assistance claims about his trial counsel, but none of them dealt with his counsel's failure to adequately object to the trial court's dismissal of hard-of-hearing jurors. The state court never addressed these claims.

[2] The government maintains that Meadows did not present his ineffective-assistance claim to the state court and thus we can remand to the state court for Meadows to exhaust this claim. *See* 28 U.S.C. § 2254(b)(1)(A); *see also Coleman v. Thompson*, 501 U.S. 722, 732 (1991). But even if a claim is unexhausted, we may deny it on the merits. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

### B. *Federal Court Proceedings*

Meadows then brought a pro se petition for federal habeas corpus relief under 28 U.S.C. § 2254, challenging his conviction. The district court appointed counsel to Meadows. Meadows then filed an amended petition focusing on his ineffective-assistance-of-counsel claim.

The district court held an evidentiary hearing on this claim. Meadows called three witnesses: his trial attorney and two other attorneys who testified as experts. At the hearing, Meadows's trial attorney recounted his decision making at the 2008 trial. He made reference to contemporaneous notes from the voir dire in which he identified the four hard-of-hearing jurors the trial court judge had dismissed and noted that their dismissal was a potential appellate issue. He also explained that after Meadows's conviction, he had filled out an appellate packet noting the dismissal of the jurors. He further testified that at the time of the trial, he knew he was able to seek a continuance or recess to try to get assistive devices for the jurors, yet he chose not to make such a request. He could not remember his rationale for this decision.

The two experts both gave their assessment of the trial attorney's performance during voir dire. They testified that his performance fell below the constitutional standard for counsel for several reasons. First, Meadows's attorney had failed to create an adequate record for appeal through his objections. His

objection was general, but it should have been grounded in constitutional and statutory terms. And, according to the experts, even if Meadows's attorney was unaware of the relevant legal grounds for his objection, he should have done further research or contacted a supervisor for advice. Second, the experts faulted Meadows's attorney for doing nothing when the court offered to take a recess to look into the possibility of getting equipment to accommodate the hard-of-hearing jurors. They indicated that any reasonable attorney in his position would have pressed harder to get the equipment. They agreed that neither of these failures could be justified as strategic decisions.

Following the evidentiary hearing, the district court denied Meadows's petition on the merits. Applying the standard for ineffective assistance of counsel articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), the court concluded (1) the attorney's performance as trial counsel had not been constitutionally deficient because, when confronted with the dismissal of hard-of-hearing jurors in the midst of voir dire, he objected to their dismissal and specifically raised the issue of obtaining assistive devices to the court, and (2) Meadows needed to prove actual prejudice resulting from any deficient performance, but had not provided any evidence showing prejudice.

## II. Analysis

Meadows contends the district court incorrectly determined that his attorney's performance was constitutionally adequate and that he had to prove actual prejudice.

We disagree with Meadows's arguments on both issues. Given that his attorney lodged objections and sought accommodations for the hard-of-hearing jurors, he met the constitutional standard for effective assistance. We also conclude Meadows needs to show actual prejudice to prevail, a burden he does not meet.

### A. Standard of Review

Ineffectiveness of counsel is a mixed question of law and fact that we review de novo. *See Bullock v. Carver*, 297 F.3d 1036, 1044 (10th Cir. 2002). Typically, when faced with a petition for habeas corpus we would review a state court's resolution of questions of law with a great deal of deference. *See* 28 U.S.C. § 2254(d)(1) (indicating courts should not grant relief unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"). But when, as here, the petitioner's claim has not previously been adjudicated in state court proceedings, "we exercise our independent judgment and review the federal district court's

conclusion of law de novo." *Hooks v. Workman*, 689 F.3d 1148, 1164–65 (10th Cir. 2012) (internal quotation marks omitted).

## B. Ineffective Assistance of Counsel

The Sixth Amendment guarantees criminal defendants a right to counsel. *See* United States Const. amend VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."). In *Strickland*, the Supreme Court interpreted this to include a right to the *effective assistance* of counsel. *See* 466 U.S. 668, 686 (1984). There, the Court announced a two-prong test for determining whether counsel's performance deprived a criminal defendant of this right. First, the defendant must show his counsel's performance fell "below an objective standard of reasonableness" and, second, "the deficient performance prejudiced the defense." *Id.* at 687–88. If the defendant cannot establish either of these prongs, his ineffective-assistance claim fails. *See id.* at 697.

### 1. Performance

While it may be tempting to assess a trial counsel's performance with all the benefits of hindsight, we cannot. Instead, our review of counsel's performance must be "highly deferential." *Harmon v. Sharp*, 936 F.3d 1044, 1058 (10th Cir. 2019) (internal quotation marks omitted). When evaluating a trial counsel's performance, we must presume the counsel "to have rendered adequate

-10-

assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* (internal quotation marks omitted). To be constitutionally deficient, the counsel's performance "must be outside the wide range of professionally competent assistance." *Id.* (internal quotation marks omitted). "To demonstrate constitutional deficiency, [the petitioner] must show that counsel's performance was completely unreasonable, not simply wrong." *Fox v. Ward*, 200 F.3d 1286, 1295 (10th Cir. 2000).

As part of the deference we show to the trial counsel's decisions, we presume the counsel's challenged action "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks omitted); *see also Harrington v. Richter*, 562 U.S. 86, 109 (2011) ("There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." (internal quotation marks omitted)). This presumption extends to counsel's actions during voir dire. *See Fox*, 200 F.3d at 1295. "[T]he petitioner bears a heavy burden when it comes to overcoming that presumption." *Harmon*, 936 F.3d at 1058 (internal quotation marks omitted; alterations incorporated). While "courts may not indulge 'post-hoc rationalization' for counsel's decisionmaking that contradicts the available evidence of counsel's actions, neither may they insist counsel confirm every aspect of the strategic basis for his or her actions." *Harrington*, 562 U.S. at 109.

The presumption that a trial counsel engaged in sound trial strategy dissipates, though, "when an attorney has a demonstrated ignorance of law directly relevant to a decision." *Hooks*, 689 F.3d at 1198.

Because ineffective-assistance claims are often fact-intensive, the Supreme Court has been careful not to make categorical rules about when an attorney's performance becomes constitutionally deficient. But it has provided some general guidance. In *Strickland* and many subsequent cases, the Supreme Court has explained that counsel has a "duty to make reasonable investigations [of law and facts] or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 691. And in *Hinton v. Alabama*, the Court said "an attorney's ignorance of a point of law that is *fundamental* to his case combined with his failure to perform basic research on that point is a quintessential example of an unreasonable performance under *Strickland*." 571 U.S. 263, 274 (2014) (emphasis added).

### 2. Prejudice

Even if an attorney renders deficient performance, we will not disturb a conviction unless the criminal defendant shows he suffered actual prejudice. In this context, prejudice is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1911 (2017) (quoting *Strickland*, 466

U.S. at 694). As the Court in *Strickland* explained: "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U.S. at 686.

But ineffective-assistance-of-counsel claims are sometimes accompanied by claims that the counsel's deficient performance resulted in a structural error. A structural error is one that adversely "affects the framework within which the trial proceeds, rather than being simply an error in the trial process itself." *Weaver*, 137 S. Ct. at 1907 (internal quotation marks omitted; alterations incorporated). These types of errors are fundamental malfunctions of the trial process, depriving defendants of the very benefits of due process guaranteed by the Constitution. The Supreme Court has identified a number of structural errors, including denying a criminal defendant the right to represent himself, depriving a criminal defendant of his right to an attorney, and failing to give a reasonable-doubt instruction. *See Neder v. United States*, 527 U.S. 1, 8 (1999) (collecting cases).

When a defendant objects to such an error at trial and successfully raises the error on direct appeal, "the defendant generally is entitled to automatic reversal regardless of the error's actual effect on the outcome." *Weaver*, 137 S. Ct. at 1910.

When a trial counsel fails to object to a structural error at trial and thus the issue is never brought before a court on direct appeal, a criminal defendant might still dust off that error and re-invoke it as part of a subsequent ineffective-assistance-of-counsel claim. In such situations, like here, courts must determine whether the petitioner needs to show actual prejudice—as is required under *Strickland*—or whether automatic reversal is warranted—the remedy used for structural errors.

Our review of the cases lead us to conclude actual prejudice is required in this context. For example, in *Weaver*, the Supreme Court considered the interplay between these two approaches to prejudice in habeas proceedings. *See id.* at 1907. Faced with this tension, the Court explained that simply labeling something as a "structural error" has no "talismanic significance as a doctrinal matter." *Id.* Thus, even though the Court considered the error at issue there—violation of the right to a public trial—to be structural, it still required Weaver to show that his counsel's failure to object to this error actually prejudiced him.

The Court cautioned that the "rules governing ineffective-assistance claims must be applied with scrupulous care." *Id.* at 1912 (internal quotation marks omitted). It pointed to "the difference between a public-trial violation preserved and then raised on direct review and a public-trial violation raised as an ineffective-assistance-of-counsel claim" when explaining why automatic reversal

was not warranted when a structural error was raised in the ineffective-assistance context. *Id.* Direct review provides a relatively quick and simple method for correcting errors by the trial court, but "the costs and uncertainties of a new trial are greater" when an error is first identified through an ineffective-assistance claim. *Id.* This is because "an ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, thus undermining the finality of jury verdicts." *Id.* (internal quotation marks omitted and alterations incorporated). In this context "[t]he finality interest is more at risk." *Id.* The Court concluded "[t]hese differences justify a different standard for evaluating a structural error depending on whether it is raised on direct review or raised instead in a claim alleging ineffective assistance of counsel." *Id.*

The Court also explained that errors have traditionally been considered structural for one of three reasons: (1) "if the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest"; (2) "if the effects of the error are simply too hard to measure"; or (3) "if the error always results in fundamental unfairness." *Id.* at 1908. In denying Weaver's claim, the Court assumed that a defendant did not need to show actual prejudice when his attorney's deficient performance led to structural errors of the last kind—those always resulting in fundamental unfairness. *See id.* at 1911 ("For the analytical purposes of this case, the Court will assume that Petitioner's

-15-

interpretation of *Strickland* is the correct one."). Thus, before concluding that Weaver had to demonstrate actual prejudice to succeed on his ineffective-assistance claim, the Court ruled out the possibility that the error in his case was the kind that always resulted in fundamental unfairness.

The Court explained the public-trial violation at issue was not this kind of error. Weaver's trial counsel had failed to object to closure of a courtroom to the public during jury selection. The Court acknowledged that such a violation of the public-trial right was structural. *Id.* at 1908. But the error was structural under only the first two rationales identified by the Court—it affected the rights of the public and press and it was hard to measure the effect of the error. *See id.* at 1910. The Court concluded it did not fall into the third category of structural errors: "not every public-trial violation will in fact lead to a fundamentally unfair trial." *Id.* at 1911. Because the structural error at issue would not always result in fundamental unfairness, the Court did not decide whether such errors warranted automatic reversal. *Id.* ("In light of the Court's ultimate holding, however, the Court need not decide that question here.").

### C. Application

To prevail, Meadows must meet both the performance and prejudice prongs from *Strickland*. As we explain below, we agree with the district court that he has failed on both.

-16-

*1. Performance*

Meadows maintains his attorney's performance during voir dire was constitutionally deficient for two reasons: (1) his attorney did not adequately ground his objections to the dismissal of hard-of-hearing jurors in statutory and constitutional terms, and (2) his attorney did not ask for a recess or continuance to obtain assistive devices for these jurors.

As an initial matter, we agree with the district court that Meadows had viable objections to the dismissal of the jurors under federal law. At the time of the trial, the Supreme Court had concluded "that a State cannot, consistent with due process, subject a defendant to indictment or trial by a jury that has been selected in an arbitrary and discriminatory manner, in violation of the Constitution and laws of the United States." *Peters v. Kiff*, 407 U.S. 493, 502 (1972). Title II of the Americans with Disabilities Act had made clear that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Relevant here, a person is "qualified" if "with or without . . . the provision of auxiliary aids and services," he "meets the essential eligibility requirements for . . . the participation in programs or activities provided by a public entity." *Id.* at § 12131(2). The ADA did, and continues to,

-17-

extend its protections to court proceedings. *See Tennessee v. Lane*, 541 U.S. 509, 527–29 (2004). A trial court violates a defendant's right to due process through the arbitrary and discriminatory exclusion of jurors with disabilities who could use auxiliary aids to participate in the court proceedings.[3]

Meadows insists his attorney's failure to frame the objection in these statutory and constitutional terms was objectively unreasonable. According to Meadows, his attorney's ignorance of the relevant law resulted in an inadequate record for appeal. He likens his attorney's failure to the facts of *Hinton*. In *Hinton*, the criminal defendant's attorney hired a ballistics expert who lacked relevant expertise for the issue he would testify on at trial. *See* 571 U.S. at 268. The attorney filed a motion for funding to hire an expert witness, which the court granted. But, in granting the funds, the court was working off of an outdated

---

[3] Colorado case law and statutes appear to extend similar protections. *See Carillo v. People*, 974 P.2d 478, 492 n.10 (Colo. 1999) ("[W]e recognize that the State of Colorado does not allow the automatic exclusion of prospective jurors with hearing problems, consistent with the [ADA]." (citing Colo. Rev. Stat. § 13-71-104)). Section 13-71-104(3)(b) provides that

> "A person with a disability shall serve, except where the court finds that such person's disability prevents the person from performing the duties and responsibilities of a juror. Before dismissing a person with a disability on the basis of that person's disability, the court shall interview the person to determine the reasonable accommodations, if any, consistent with federal and state law, that the court shall make available to a person to perform the duties of a juror."

version of the state statute which set a limit on the amount he could approve. Over a year before the trial began, the state statute had been amended to eliminate that limitation. The attorney knew he needed more funding to hire an effective expert, but he settled for the less credible expert based upon his mistaken belief about how much money he was afforded to spend. The Supreme Court concluded such a mistake of law constituted objectively unreasonable performance. *See id.* at 275 ("The only inadequate assistance of counsel here was the inexcusable mistake of law—the unreasonable failure to understand the resources that state law made available to him—that caused counsel to employ an expert that he himself deemed inadequate.").

The fact that Meadows's attorney did not specifically construe his objection in statutory or constitutional terms does not take his performance "outside the wide range of professionally competent assistance." *Harmon*, 936 F.3d at 1058. In the midst of jury selection, Meadow's attorney understood that the judge's actions were improper. He voiced this concern and formally objected. *See* Trial Tr., Vol. I at 79 ("[W]e have the obligation to provide these folks the necessary equipment so that they can serve as jurors if needed."). The judge continued to recognize this standing objection when he dismissed two other hard-of-hearing jurors. The attorney recorded in his contemporaneous notes that the exclusion of these jurors was a potential appellate issue. At the end of trial, he included the

-19-

issue in an appellate packet. On appeal, Meadows argued the judge's dismissal of hard-of-hearing jurors was improper under Colorado Revised Statute § 13-71-104. Though the Colorado Court of Appeals rejected this claim on the merits, it viewed the objection at trial as adequate to preserve the issue for appeal with regard to three of the jurors. *See* R., Vol. I at 143–47.[4]

The attorney's performance here is distinguishable from that of the counsel in *Hinton*. In *Hinton*, the defendant's "only reasonable and available defense strategy requires consultation with experts or the introduction of expert evidence." 571 U.S. at 273. Despite being aware of how much his client's case hinged on expert testimony, Hinton's counsel hired an expert he *knew* to be inadequate and did *nothing* to confirm whether he could hire a better expert. He failed to understand the basic law that was *fundamental* to his client's case. Here, in the midst of voir dire, the judge excused several hard-of-hearing jurors. Meadows's attorney identified that the excusal of the jurors was improper, objected in general terms, and noted this objection as a potential appellate issue.

---

[4] Meadows did not argue that his appellate counsel was ineffective by failing to argue the dismissal of hard-of-hearing jurors violated due process. And because he failed to raise such a claim during state post-conviction collateral proceedings, neither the district nor we could have considered such an argument anyway. *See Davila v. Davis*, 137 S. Ct. 2058, 2062–63 (2017) (explaining ineffective-assistance claims about appellate counsel that are not presented to a state court cannot then be raised through a federal habeas petition).

Meadows's attorney believed his objection had preserved the issue for appeal and moved on with the jury selection.

The Sixth Amendment does not require us to measure attorneys against the Platonic ideal of the best possible performance. *See Yarbough v. Gentry*, 540 U.S. 1, 8 (2003) (per curiam) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight."). Here, the objection undoubtedly could have been more specific. But Meadows's attorney was not *completely unreasonable* in deciding that his objection was sufficient to preserve the issue for appeal. The Sixth Amendment right to effective assistance of counsel establishes a constitutional floor, not a set of best practices. We cannot say the attorney's general objection to the dismissal of the jurors, which a state appellate court deemed sufficient to preserve at least one issue for appeal, fell below that floor.

Beyond the objection, Meadows maintains his attorney's performance was constitutionally deficient because he failed to ask the court for a recess or continuance to obtain assistive devices for the jurors. Meadows argues that his attorney had no reason to acquiesce to the dismissal of the hard-of-hearing jurors because his attorney had no information indicating whether those jurors would be favorable or unfavorable to Meadows. Thus, according to Meadows, his

attorney's decision to allow the jurors to be dismissed and preserve the issue for appeal was not objectively reasonable.

As a reminder, Meadows's attorney did specifically raise the issue of getting accommodations in response to the dismissal of a hard-of-hearing juror. The judge then told Meadows that no equipment was available at the courthouse, probably could not be made available within a reasonable amount of time, and might not be effective anyway. At the evidentiary hearing, Meadows's attorney was unable to explain why he did not push harder to accommodate these jurors.

But we do not "insist counsel confirm every aspect for the strategic basis for his . . . actions." *Harrington*, 562 U.S. at 109. Meadows's attorney knew he could seek a recess or continuance to try to get equipment to accommodate the hard-of-hearing jurors, but he chose to forgo those options. *See* R., Vol. II, at 69 ("[I]f I thought I needed or would get an advantage by requesting a continuance, I would have done so."). And the record indicates different reasons why he may have taken this course of action. For instance, Meadow's attorney may have concluded that assistive equipment may not solve the problem in the first place, at the cost of delaying the trial and inconveniencing the other potential jurors. He may have wanted to maintain his rapport with the court. Meadows's own expert conceded that a conciliatory approach is a valid strategic consideration. *See* R., Vol. II, at 110–11. Proceeding with trial given the availability of an otherwise

-22-

adequate jury pool can justify a decision not to seek a delay, especially if there is no reason to think the excused jurors would be helpful to the defense.

Given this context, we cannot say the attorney's decision to not ask for a recess or continuance in an attempt to obtain assistive equipment was objectively unreasonable. We must presume that "counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." *Harrington*, 562 U.S. at 110. Meadows's attorney asked the court whether it was possible to get assistive devices for the hard-of-hearing jurors. The trial court judge told him it was likely not possible, and may not even be helpful, to obtain such equipment. The next time the issue arose, Meadows's attorney lodged a formal objection and believed that this objection was enough to preserve the issue for appeal. The prosecutor said she might be able to have such devices brought up but ultimately was unable to do so. Faced with delaying jury selection to continue the hunt for equipment or to forge on, Meadows's attorney decided that he had preserved the issue for appeal and it was in his client's best interest to continue. And having a solid objection in your hip-pocket for appeal can serve tactical objectives if your client is convicted.

In sum, trial counsel's decision not to pursue the issue further was not outside the bounds of reasonableness.

* * *

-23-

In evaluating his trial counsel's performance, Meadows wants us to engage in an inappropriate level of post-hoc speculation. Meadows's attorney objected to the dismissal of the hard-of-hearing jurors and expressly asked the court about getting accommodations for these jurors. To go back and reevaluate how the objection could have been made *more fulsomely* or how the request for accommodations could have been made *more vigorously* takes us beyond the limited role we are given when reviewing whether a trial counsel's performance was constitutionally deficient.

### 2. Prejudice

Meadows has also failed to meet *Strickland*'s prejudice prong.

Meadows maintains he should not have to satisfy the actual prejudice standard normally required by *Strickland*. He argues the exclusion of hard-of-hearing jurors is a structural error that always results in fundamental unfairness and that the Court in *Weaver* indicated proof of actual prejudice is not necessary in such instances.

*Weaver* does not stand for the proposition that Meadows advances. The Court specifically limited its holding to "the context of trial counsel's failure to object to the closure of the courtroom during jury selection." *Weaver*, 137 S. Ct. at 1907. And while the Court in *Weaver* assumed for the purpose of its analysis that it would automatically reverse if it found that trial counsel had not objected

-24-

to an error that always results in fundamental unfairness, it expressly withheld judgment on this issue.[5]  *See id.* at 1911 ("In light of the Court's ultimate holding . . . [it] need not decide that question here.").  Despite Meadows's contentions otherwise, the Court in *Weaver* did not require future courts to import the structural error standard into ineffective-assistance cases.

Regardless of what standard applies for Weaver's third category of structural errors, the parties here focused on whether the alleged structural error in Meadows's trial even fit within that third category, not on whether automatic relief is available for third-category errors.  And because we can decide this issue on the argued grounds, we find it unnecessary to address what *Weaver* left

---

[5]  Justice Alito wrote a separate opinion, concurring in the judgment.  *See Weaver*, 137 S. Ct. at 1915 (Alito, J., concurring) (explaining that the Court has relieved defendants of the obligation to show actual prejudice "in only a very narrow set of cases in which the accused has effectively been denied counsel altogether: These include the actual or constructive denial of counsel, state interference with counsel's assistance, or counsel that labors under actual conflicts of interest").  Justice Thomas, who joined the majority opinion*,* did not believe the majority opened the door for automatic reversals based on structural errors raised in the ineffective-assistance context.  *Id.* at 1914 (Thomas, J., concurring) ("I do not read the opinion of the Court to preclude the approach set forth in Justice Alito's opinion, which correctly applies our precedents.").  One circuit court has come to a similar conclusion as Justice Thomas.  *See Parks v. Chapman*, 815 F. App'x 937, 944 (6th Cir. 2020) (unpublished) *cert. denied*, 2021 WL 1072353 (Mar. 22, 2021) (rejecting the argument that *Weaver* ever compels a court to automatically reverse if the defendant shows a structural error as part of an ineffective-assistance claim).

open—whether prejudice has to be proved to prevail under a *Weaver* third-category claim.

Instead, we resolve this issue on the grounds argued by the parties: even if we assume the alleged error was structural, it was not the sort of structural error that always results in fundamental unfairness. We start by precisely defining the alleged structural error: the selection of a jury in a way that resulted in the arbitrary exclusion of four hard-of-hearing prospective jurors. Although discrimination—whether based on disability or some other characteristic—in jury selection might sometimes result in fundamental unfairness, that does not mean it *always* will. The remaining jury pool may be completely unbiased and fair to the defendant, so that he still receives a fair trial despite the arbitrary or discriminatory exclusion of certain jurors.

This case presents a prime example of how discrimination in jury selection can still result in a fair trial. As noted by the district court, there is no evidence of any juror bias, and no connection between the basis for the discrimination—hearing issues—and the nature of the case or the defendant. Indeed, Meadows never tried to argue that his trial specifically was unfair in any particular way. Because we perceive no hint of fundamental unfairness in this case despite the alleged structural error, that alleged error is not one that always results in fundamental unfairness. *See id.* at 1913 ("There has been no showing,

furthermore, that the potential harms flowing from [the alleged structural error] came to pass in this case.").

Thus, even if the exclusion of the hard-of-hearing jurors constituted structural error, Meadows must satisfy *Strickland*'s standard for showing prejudice. And tasked with proving actual prejudice, Meadows's claim of ineffective assistance of counsel withers on the vine. *Strickland* requires Meadows to show that but for his counsel's alleged errors, there was "a reasonable probability that . . . the result of the proceeding would have been different." 466 U.S. at 694. Meadows acknowledges that he cannot make this showing in his case. *See* Reply Br. at 17 ("[I]t is impossible to show what effect that may have had on the ultimate finding of his guilt."). Thus, Meadows's claim of ineffective assistance of counsel fails and his petition for habeas corpus along with it.

## III. Conclusion

For the foregoing reasons, we AFFIRM the district court's denial of Meadows's petition for habeas corpus.